# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN L. HOFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 2:20-cv-06427 |
| ) | |
| U.S. CUSTOMS AND BORDER PROTECTION, ) | |
| DEFENDANT. ) | |
| ) | |

**DECLARATION OF PATRICK A. HOWARD**

Pursuant to 28 U.S.C. § 1746, I, Patrick A. Howard, make the following declaration, which unless otherwise indicated, is based upon my own knowledge and observation.

1. I am a Branch Chief within the Freedom of Information Act (FOIA) Division at U.S. Customs and Border Protection (CBP or the Agency). I have been a Branch Chief in the FOIA Division since February 8, 2015. In this capacity, I oversee a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to the FOIA, 5 U.S.C. § 552, the Privacy Act (PA), 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2. I am familiar with CBP's procedures for responding to FOIA requests. I provide technical and administrative supervision and direction to a group of FOIA specialists in processing FOIA requests and assist with FOIA/PA litigation matters, and I am personally familiar with the processing of FOIA/PA responses, including, at times, by directly reviewing for adequacy and compliance to Federal laws and regulations.

3. In the normal course of business, FOIA requests are identified as either simple traveler requests or complex non-traveler requests and routed appropriately. For non-traveler requests such as the one at issue in this matter, FOIA Division evaluates the request to determine which offices are "most likely" to have responsive information, should any exist. Generally, we rely on those offices to direct us further if there are additional offices needed, or if they are not the correct place to direct the request. If the search requests e-mail communications, CBP's Office of Information Technology (OIT) is included in this triage.

4. I am familiar with the FOIA request submitted to CBP by plaintiff Karen Hoffman. Upon receipt of the FOIA request, the FOIA Division triaged the request and determined that U.S. Border Patrol might possess responsive records. The USBP consists of headquarters and twenty sectors with patrol responsibilities covering the United States and Puerto Rico.

5. Specifically, the FOIA Division determined that the Del Rio, Texas sector of USBP (the Del Rio Sector) was most likely to have responsive information. The searches carried out by Del Rio Sector consisted of identifying internally which offices or personnel were likeliest to have responsive records and tasking the searches. These searches were performed by members of the Del Rio Sector staff (including Intel, Operations, and Foreign Operations) by searching shared drives with appropriate keywords/phrases, including: a) Hector Menchaca; b) +52-878-703- 2497; c) capacity; d) asylum; e) Eagle Pass POE; and f) detained in Piedras Negras. The date range searched was January 1, 2019 to April 2019. Responsive records were uploaded to FOIAonline.gov, further reviewed by CBP personnel, and then produced to Ms. Hoffmann.

6. CBP identified the Del Rio Sector as the most likely source for responsive material because it was tasked with coordinating and assisting the Eagle Pass Port of Entry due to its proximity to Eagle Pass and because it possessed the greatest number of assets to deal with the flow of migrants. Because other sectors did not coordinate or administer the Eagle Pass Port of Entry, other sectors were determined to be unlikely to have responsive records.

7. During the period in question – January 1, 2019 to February 26, 2019 – the Agency exchanged information regarding the flow of migrants through Eagle Pass exclusively via electronic documents, i.e. emails, Microsoft word documents, electronic reports, etc., and thus the Del Rio Sector shared electronic files were likely to contain any and all responsive information. Computers in Del Rio Sector are networked together and linked to a server with a large, shared storage area referred to as the S: drive or shared drive. File hierarchies are created on the share drive by individuals or units to serve the information processing and storage functions that are required to operate the sector. Although searches were carried out across the entire Del Rio Sector share drive, files specific to this 2019 mass migration event were stored in S:\DLR013A\GROUPS 2\DRT FOB. The event required a unified response. An incident command post was set up and staffed by various units including member of the Del Rio Sector Intelligence and the Del Rio Sector Foreign Operations Branch. The Agency did not search for paper records as it determined that such a search was unlikely to yield responsive records.

8. In addition to the electronic records search made by the Del Rio Sector, FOIA Division requested the assistance of OIT's Enterprise Data Management & Engineering Directorate (EDMED) to conduct an enterprise email search. EDMED conducted an enterprise email search of <u>all</u> email address mailboxes in the "cbp.dhs.gov" domain covering the dates from January 1 to February 25, 2019 for the keywords/subjects "Hector Menchaca" or the telephone number "+52-878-703-2497." Responsive records were uploaded to FOIAonline.gov, further reviewed by CBP personnel, and then produced to Ms. Hoffmann.

9. CBP determined that using these terms to search across all of the Agency email accounts (over 76,000 mailboxes) was the best means to retrieve responsive information without generating an enormous set of records that would be largely unresponsive to Ms. Hoffmann's FOIA request. For example, terms such as "migrants"

or "list of migrants", if applied to all of CBP's email accounts, would yield an extremely large number of emails containing that term, the vast majority of which would not be germane of Ms. Hoffmann's FOIA request. Even using the smaller set of search terms, the FOIA office still had to sort through many non-responsive pages of e-mail which contained the names "Hector" and "Menchaca" but which were not a reference to the individual specified in the FOIA request.

10. CBP's FOIA Division does not have the ability to remotely access or search text messages or WhatsApp messages. Any search of an agency employee's mobile phone would have to be done manually, by personally reviewing that employee's phone. I understand that two agency employee's phones were reviewed in this manner in connection with Ms. Hoffmann's FOIA request.

11. A WhatsApp account is linked to a specific phone number. I have been informed that the two CBP employees whose Agency mobile phones were manually searched had their old Agency mobile number transferred to their new phones. Thus, there would be no difference if a search of the WhatsApp account tied to a specific phone number occurred on a replacement phone with the same number as the messages would still be searchable.

12. CBP made two separate productions of responsive information to Ms. Hoffmann in January and February 2021. The Agency produced 443 pages across the two productions. An additional 62 pages were identified as duplicates. There were also 2,210 pages of non-responsive records, the majority of which were documents referencing a CBP employee who had the same surname as Hector Menchaca.

13. In December 2021, approximately a year after she filed her lawsuit in federal court, Hoffmann requested that records from the Office of Field Operations (OFO) be searched for responsive material. I checked with OFO and learned that they had run a search but had not properly loaded the documents for review. The timeframe searched for OFO documents was January 1, 2019 through February 26, 2019. I was informed that a search was performed on the Laredo Ops Shared Drive, which was reasonably believed to contain any potential responsive records. This search identified MCAT daily reports and e-mails, which were produced to the plaintiff. The responsive records from OFO were then reviewed and I produced 393 pages to Ms. Hoffmann on February 24, 2022, withholding 34 pages in their entirety.

14. Later, Ms. Hoffmann requested that the Agency produce queue management reports for some days that were not produced on February 24, 2022. The original search was done manually by an OFO employee searching their email and archives for reports from the specified dates. A subsequent search from CBP's OIT group located the missing reports, which were produced to plaintiff on July 13, 2022. On July 26, 2022, CBP produced to plaintiff emails that had previously been produced but which now did not redact the name "Hector Menchaca."

15. As Ms. Hoffmann is undoubtedly aware, the Agency also publishes on its website information from other FOIA requests and litigation. Additional information that could be relevant to her stated concern re the Agency's "Metering" program, as set forth in her

3

December 10, 2021 letter, can be found at https://www.cbp.gov/site-policy-notices/foia/reading-room. In particular, this website contains a specific section dedicated to Migrant Protection Protocols which may be of further interest to Hoffmann. *See* https://www.cbp.gov/site-policy-notices/foia/reading-room?title=&field_foia_category_list_value=All&field_date_release_value%5Bmin%5D=&field_date_release_value%5Bmax%5D=&body_value=MPP.

16. CBP made good faith efforts to search for, review, and produce non-privileged documents responsive to Ms. Hoffmann's FOIA request. I believe CBP has produced all responsive documents that should not be withheld.

I declare under penalty of perjury that the forgoing statement is true and correct.

July 27, 2022

*Patrick Howard*
Patrick A. Howard