# Exhibit 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

-------------------------------------------------------

|  |  |  |
|---|---|---|
| KAREN L. HOFFMANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.: 2:20-cv-06427 |
| v. | ) | |
| | ) | |
| U.S. CUSTOMS AND BORDER PROTECTION | ) | |
| | ) | |
| Defendant. | ) | |

-------------------------------------------------------

**DECLARATION OF PATRICK A. HOWARD CONCERNING CBP'S VAUGHN INDEX**

I, Patrick A. Howard, declare the following to be true and correct:

1.  I am a Branch Chief in the Freedom of Information Act (FOIA) Division, Privacy and Diversity Office, Office of the Commissioner, U.S. Customs and Border Protection (CBP).  I have been a Branch Chief in the FOIA Division in Washington, D.C. since February 8, 2015.  In this capacity, I oversee a staff of Government Information Specialists, the processing of requests for records submitted to CBP pursuant to the FOIA, the processing of certain requests submitted to CBP pursuant to 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, and other activities conducted pursuant to applicable records access provisions.

2.  I am familiar with CBP's procedures for responding to FOIA requests.  I provide technical and administrative supervision and direction to a group of Government Information Specialists responsible for processing requests for release of CBP documents and information, assist with FOIA litigation matters, and I am personally familiar with the processing of FOIA responses, including, at times, by directly reviewing for adequacy and compliance with federal laws and regulations.

3.  In this declaration, I provide additional clarifying information and details regarding specific redactions of the previously released records, including intra-agency emails, management reports, and intelligence reports.

4.  On behalf of CBP and as described more fully below, I assert protections under FOIA exemption 5 for those records under the deliberative process privilege that reflect CBP's internal deliberations, contain draft language or editorial comments, and are pre-decisional. FOIA Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).

5.   On behalf of CBP and as described more fully below, I assert protections under FOIA Exemption 6 for those records which include personal privacy interests of CBP officials.  FOIA Exemption 6 protects personal privacy information, the unveiling of which "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Privacy is defined by FOIA to "encompass the individual's control of information concerning his or her person."

6.   On behalf of CBP and as described more fully below, I assert protections under FOIA Exemption 7(C), which may be used to withhold law enforcement records or information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).  CBP asserts Exemption (7)(C) to protect law enforcement personnel from harassment and annoyance in the conduct of their official duties and in their private lives, which could conceivably result from the public disclosure of their identities.  The privacy interest in the identity of an individual in the redacted document outweighs any public interest in disclosure of that information.

7.   On behalf of CBP and as described more fully below, I assert protections under FOIA Exemption 7(E), which may be used to withhold "records or information compiled for law enforcement purposes that would disclose techniques and procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  CBP asserts Exemption 7(E) to protect from disclosure of sensitive information related to internal CBP infrastructure, the disclosure of which would leave CBP IT systems vulnerable and hinder cybersecurity defensive measures.

8.   I submit this declaration in support of CBP's assertions of FOIA Exemptions 5, 6, 7(C), and 7(E) as described in more detail below and in the attached Vaughn Index at Exhibit 1.

<u>CBP Reports</u>

9.   Document 1:  This electronic file contains the Del Rio Incident Command Post Situational Report which contains information about staffing size, photographs of CBP personnel, and operational plans and law enforcement strategies, including maps. The entirety of each document was released with the exception of identifying titles, specific employee names, and deliberative processes relating to threats to border security operations at and between POEs which, if disclosed would assist individuals seeking to circumvent the law.  Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.  Release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas, allowing threat actors to target CBP officers who are gathered, and allowing individuals to overwhelm CBP officers with numbers in excess of CBP staffing. This information was withheld under FOIA Exemptions 5, 6, 7(C) and 7(E).

10.   Document 2:  This electronic file contains CBP Region VI Executive Summary Update – Central American Migrant Caravan, which contains information regarding CBP staffing numbers and operational plans to further secure POEs, maps containing CBP areas of focus, as well as internal CBP case numbers. The entire document was released with the exception of identifying titles, specific employee names, other confidential, non-public information, such as law security assessments at POEs and law enforcement staging and deployment, CBP capacity, and

internal case numbers. The disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy and to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.  The release of CBP case numbers increase risk of unauthorized access to the Agency's IT system. Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings. Furthermore, the release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas or enforcement zones, allowing threat actors to target CBP officers who are gathered, and allowing individuals to overwhelm CBP officers with numbers in excess of CBP staffing.  This information was withheld under FOIA Exemptions 6, 7(C) and 7(E).

11.     Documents 7 and 8:  These electronic files contain combined January and February Queue Management Reports.  The reports were released in their entirety with the exception of confidential, non-public information, regarding CBP capacity.  Specifically, identification of the percentages of credible fear migrant capacity at the Ports of Entry in the Laredo Field Office.  Release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed CBP capacity.  This information was withheld under FOIA Exemption 7(E).

12.     Document 10:  This electronic file contains Migration Crisis Action Team Reports.  The reports were released in their entirety with the exception of non-public information regarding capacity at individual ports of entry.  Capacity numbers and percentages by Field Office were released. Release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed CBP capacity. This information was withheld under FOIA Exemption 7(E).

13.     Document 12:  This electronic file contains Migration Crisis Action Team Reports.  The reports were released in their entirety with the exception of non-public information regarding capacity at individual ports of entry.  Capacity numbers and percentages by Field Office were released. Release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed the capacity. This information was withheld under FOIA Exemption 7(E).

CBP Emails

14.     Document 3:  This electronic file contains emails from a CBP supervisor to groups within CBP containing a Weekend Activity Report for February 22, 2019, through February 25, 2019. The entire email thread was released with the exception of email addresses, identifying titles, phone numbers, specific employee names, and CBP staffing numbers. The disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy and to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.  The release of CBP case numbers increase risk of unauthorized access to the Agency's IT system. Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings. Furthermore, the release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas or enforcement zones, allowing threat actors to target CBP officers who are gathered,

and allowing individuals to overwhelm CBP officers with numbers in excess of CBP staffing. This information was withheld under FOIA Exemptions 6, 7(C) and 7(E).

15.     Documents 4 and 5: These electronic files contain emails between CBP officials and individuals and groups within CBP forwarding Queue Management Report for Eagle Pass. The entire documents were released with the exception of email addresses, identifying titles, phone numbers, specific employee names. Release of this information would create and unwarranted invasion of personal privacy and increase the risk of unauthorized access to the Agency's IT system. This information was withheld under FOIA Exemptions 6 and 7(C).

16.     Document 6: This electronic file contains emails between CBP officials regarding Central American Caravans and Migration crisis flow, between February 1-26, 2019. The entire email thread was released with the exception of email addresses, identifying titles, phone numbers and specific employee names the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy and to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives. The document includes also information compiled for law enforcement purposes, including staffing numbers, sensitive intelligence information, maps created for law enforcement purposes, CBP internal tracking numbers, and confidential sources of information which were also withheld. Release of CBP internal case numbers would increase risk of unauthorized access to the Agency's IT system. Additionally, knowledge of when and under what circumstances CBP collects and analyzes information would allow criminals to modify their behavior to avoid being the subject of an investigation. Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings. Release of non-public information about law enforcement techniques and procedures, including staffing numbers, sensitive intelligence information, maps created for law enforcement purposes, CBP internal tracking the law by numbers, and confidential sources of information could allow individuals to circumvent the law by revealing routes used by other violators, routes patrolled by CBP, and tools used by CBP to identify and stop violators. Revealing sources of information obtained by CBP would allow violators to avoid interaction with those sources. Staffing numbers may reveal areas that are difficult to staff and locations that are frequently understaffed and where CBPs ability to perform its mission is more difficult. This information was withheld under FOIA Exemptions 6, 7(C) and 7(E).

17.     Document 9: This electronic file contains emails from CBP officials regarding the MCAT Daily Report between January 2, 2019, through January 17, 2019. The entire email thread was released with the exception of email addresses, identifying titles, phone numbers and specific employee names and internal group email addresses within CBP. The disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy and to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives. The release of CBP group email addresses could increase the risk of unauthorized access to CBP systems. This document also includes sensitive information regarding capacity at various ports of entry. Overall capacity by Field Office has been released. Releasing capacity at individual ports of entry could assist individuals to circumvent the law by allowing groups to overwhelm ports of entry by arriving in numbers that exceed capacity. This information was withheld under FOIA Exemptions 6, 7(C) and 7(E).

<u>CBP Intelligence</u>

18.    Document 11:  This electronic file contains intelligence assessment regarding migration. The documents were withheld in full. Disclosure of the assessments and locations monitored would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their migration routes and avoid locations known to CBP, adopt new methods of operation, relocate, and effectuate other countermeasures, thereby hindering CBP's ability to secure the border. This information was withheld under FOIA Exemption 7(E).

I declare under a penalty of perjury that the information provided is true and correct to the best of my information, knowledge, and belief.

Signed this 27th day of July 2022.

*Patrick Howard*

Patrick A. Howard
Branch Chief, FOIA Division
Office of the Commissioner
U.S. Customs and Border Protection
U.S. Department of Homeland Security

# Exhibit A

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| Doc No. | Date | Page Number in PDF Document | Disclosure Date/Document Description | Exemption | Description of Withheld Information/ Basis for Withholding |
|---|---|---|---|---|---|
| 1 | 2/8/2019, 2/11/2019 | 1-15/15 | January 29, 2021<br><br>Del Rio Incident Command Post Situational Report | (b)(5)<br>(b)(6)<br>(b)(7)(C)<br>(b)(7)(E)<br><br>I | These documents contain the Del Rio Incident Command Post Situational Report which contains information about staffing size, photographs of CBP personnel, and operational plans and law enforcement strategies, including maps.<br><br>The entirety of each document was released with the exception of identifying titles, specific employee names, and deliberative processes relating to threats to border security operations at and between POEs which, if disclosed would assist individuals seeking to circumvent the law.<br><br>Exemptions (b)(6) and (b)(7)(C) have been applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemption (b)(7)(E) has also been applied to non-public information about law enforcement techniques and procedures to detect illegal border crossing including law enforcement staging areas, information |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | regarding the number of responding CBP officers, and maps showing focus areas for CBP. Release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas, allowing threat actors to target CBP officers who are gathered, and allowing individuals to overwhelm CBP officers with numbers in excess of CBP staffing. Additionally, staffing numbers may reveal areas that are difficult to staff and locations that are frequently understaffed, where CBPs ability to perform its mission is more difficult. |
| 2 | 2/14/2019 thru 2/25/2019 | 1-10/391<br><br>45-53/391<br><br>78-86/391<br><br>99-108/391<br><br>131-139/391<br><br>164-201/391<br><br>220-230/391<br><br>263-272/391<br><br>286-297/391 | February 18, 2021<br><br>Region VI Executive Summary Update – Central American Migrant Caravan | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | This document contains the Region VI Executive Summary Updates which contain information regarding CBP staffing numbers and operational plans to further secure POEs, maps containing CBP areas of focus, as well as internal CBP case numbers.<br><br>The entire document was released with the exception of identifying titles, specific employee names, other confidential, non-public information, such as law security assessments at POEs and law enforcement staging and deployment, CBP capacity, and internal case numbers.<br><br>Exemption (b)(6) and (b)(7)(C) were applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | 312-320/391<br><br>385-391/391 | | | Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemption (b)(7)(E) has been applied to CBP internal case numbers because release of this information would increase risk of unauthorized access to the Agency's IT system. Additionally, knowledge of when and under what circumstances CBP collects and analyzes information would allow criminals to modify their behavior so they can avoid being the subject of an investigation. Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings.<br><br>Exemption (b)(7)(E) has also been applied to non-public information about law enforcement techniques and procedures used to detect illegal border crossing, including staging locations, enforcement zones, and information regarding CBP staffing. Release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas or enforcement zones, allowing threat actors to target CBP officers who are gathered, and allowing |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | individuals to overwhelm CBP officers with numbers in excess of CBP staffing. |
| 2 | 2/13/2019 | 11-12/391 | February 18, 2021<br><br>Document with header 0500 hrs. 02-13-2019 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | This document contains a summary of Agency actions taken on 2/13/2019.<br><br>The entire document was released with the exception of identifying titles, specific employee names and other confidential, non-public staging locations and deployment of resources.<br><br>Exemptions (b)(6) and (b)(7)(E) have been applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemption (b)(7)(E) has also been applied to non-public information about law staging locations and deployment of law enforcement resources.  Release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas, allowing threat actors to target CBP officers who are gathered, and allowing individuals to overwhelm CBP officers with numbers in excess of CBP staffing. Additionally, staffing numbers may reveal areas that |

4

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | are difficult to staff and locations that are frequently understaffed and where CBPs ability to perform its mission is more difficult. |
| 2 | 2/6/2019 thru 2/19/2019 | 13-44/391<br><br>54-77/391<br><br>87-98/391<br><br>109-130/391<br><br>140-163/391<br><br>202-219/391<br><br>231-262/391<br><br>273-285/391<br><br>298-311/391<br><br>321-384/391 | February 18, 2021<br><br>Del Rio Incident Command Post Situational Report for various dates from February 6, 2019 through February 17, 2019 | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | These documents contain the Del Rio Incident Command Post Situational Report which contains information about staffing size, photographs of CBP personnel, and operational plans and law enforcement strategies, including security assessments and maps.<br><br>The entirety of each document was released with the exception of identifying titles, specific employee names, internal CBP case numbers, other confidential, non-public information, such as law enforcement procedures for investigation, CBP staging areas, and details of law enforcement exercises.<br><br>Exemptions (b)(6) and (b)(7)(E) were applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemption (b)(7)(E) has been applied to CBP internal case numbers because release of this information would increase risk of unauthorized access to the Agency's IT system. Additionally, knowledge of |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | when and under what circumstances CBP collects and analyzes information would allow criminals to modify their behavior so they can avoid being the subject of an investigation.  Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings.<br><br>Exemption (b)(7)(E) has also been applied to non-public information about law enforcement techniques and procedures to detect illegal border crossing and information regarding CBP staffing.  Release of this information could assist individuals seeking to circumvent the law by allowing potential violators to avoid the areas in or around CBP staging areas or enforcement zones, allowing threat actors to target CBP officers who are gathered, and allowing individuals to overwhelm CBP officers with numbers in excess of CBP staffing. Additionally, staffing numbers may reveal areas that are difficult to staff and locations that are frequently understaffed and where CBPs ability to perform its mission is more difficult. |
| 3 | 2/25/2019 | 1-17/37 | February 18, 2021<br><br>Email from CBP supervisor to groups within CBP containing | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | This document is an email from a CBP supervisor to groups within CBP summarizing activity at a CBP station.  The email contains personal identifying information of CBP personnel, staffing numbers, and operational plans. |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | Weekend Activity Report for February 22, 2019 through February 25, 2019 | | The entire email thread was released with the exception of email addresses, identifying titles, phone numbers, specific employee names, and CBP staffing numbers. Internal case tracking numbers were also withheld. Locations of CBP apprehensions of suspected violators, law enforcement tools and techniques used to locate individuals attempting illegal border crossing, operational assessments and plans, and information sources.<br><br>Exemptions (b)(6) and (b)(7)(E) were applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to CBP internal email addresses because such information could reasonably expected to constitute an unwarranted invasion of personal privacy and release of this information would increase risk of unauthorized access to the Agency's IT system.<br><br>Exemption (b)(7)(E) was applied to CBP internal case numbers because release of this information would increase risk of unauthorized access to the Agency's |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | IT system.  Additionally, knowledge of when and under what circumstances CBP collects and analyzes information would allow criminals to modify their behavior to avoid being the subject of an investigation.   Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings.<br><br>Exemption (b)(7)(E) was also applied to non-public information about law enforcement techniques and procedures used to detect illegal border crossing and information regarding CBP staffing.  Release of this information could assist individuals seeking to circumvent the law by providing information to those seeking to cross the border illegally about routes used by other violators, routes patrolled by CBP, and tools used by CBP to identify and stop violators.  Revealing sources of information obtained by CBP would allow violators to avoid interaction with those sources.  Additionally, staffing numbers may reveal areas that are difficult to staff and locations that are frequently understaffed and where CBPs ability to perform its mission is more difficult. |
| 3 | 2/23/2019 thru 2/25/2019 | 18-20/37 | February 18, 2021 | (b)(6) (b)(7)(C) (b)(7)(E) | This document contains Emails from CBP officials to CBP groups regarding Border Wall Protest at Hope Park |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | 31-33/37 | Emails from CBP officials to CBP groups regarding Border Wall Protest at Hope Park | | The entire email thread was released with the exception of email addresses, identifying titles, phone numbers, specific employee names and internal CBP individual and group email addresses, names of third parties, and CBP internal tracking numbers.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to CBP internal email addresses because disclosure of such information could reasonably be expected to constitute an unwarranted invasion of personal privacy and would increase risk of unauthorized access to the Agency's IT system.<br><br>Exemption (b)(7)(E) was applied to CBP internal case numbers because release of this information would increase risk of unauthorized access to the Agency's IT system.  Additionally, knowledge of when and under what circumstances CBP collects and analyzes information would allow criminals to modify their behavior to avoid being the subject of an |

9

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | investigation.   Release of this information would also enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings.<br><br>Exemption (b)(7)(E) was also applied to non-public information about law enforcement techniques and procedures used to detect illegal border crossing and information regarding CBP staffing.  Release of this information could assist individuals seeking to circumvent the law by providing information to those seeking to cross the border illegally about routes used by other violators, routes patrolled by CBP, and tools used by CBP to identify and stop violator.  Revealing sources of information obtained by CBP would allow violators to avoid interaction with those sources. |
| 3 | 02/25/2019 | 21-28/37 | February 18, 2021<br><br>Emails between CBP officials regarding Texas Hold'Em Initiative | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | The entire email thread from a supervisory CBPO to intelligence and enforcement groups within CBP was released with the exception of email addresses, identifying titles, phone numbers, employee names, the names and email addresses of third parties, and operational information regarding a partner with whom CBP collaborates.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to non-government, third party names and contact information, disclosure of which would constitute a |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

<table>
<tr>
<td></td>
<td></td>
<td></td>
<td></td>
<td></td>
<td>

clearly unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.

Exemptions (b)(6) and (b)(7)(C) were also applied to CBP personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.

Exemption (b)(7)(E) was applied to CBP internal email addresses because release of this information would increase risk of unauthorized access to the Agency's IT system.

Exemption (b)(7)(E) was also applied to information regarding partner with whom CBP collaborates because release of this information could assist individuals seeking to circumvent the law by allowing violators to avoid interactions with that partner and chilling that partner's willingness to coordinate with CBP.

</td>
</tr>
</table>

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| 3 | 2/24/2019 | 29-30/37 | February 18, 2021<br><br>Email from Second Level CBP supervisor to himself forwarding Daily Muster | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | The document was released in its entirety with the exception of email addresses, identifying titles, phone numbers, and specific employee names, third-party names, and non-public information regarding processing.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to non-government, third party names and contact information, disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to CBP internal email addresses because release of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy and would increase risk of unauthorized access to the Agency's IT system. |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | Exemption (b)(7)(E) was also applied to non-public information regarding number of individuals held and processed. This information is not generally known or publicly disclosed. Disclosure of this information would be detrimental to both CBP as the information could be used by individuals attempting to circumvent or violate immigration and customs laws by aiding them in taking steps to alter behavior, predict and overwhelm the Agency's processing capacity, and otherwise counter Agency enforcement operations. |
| 3 | | 33-37/37 | February 18, 2021<br><br>Emails from CBP personnel to individual outside CBP and inside CBP regarding new POC | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | The documents were released in their entirety with the exception of the names, email addresses, identifying titles, phone numbers, specific employee names, and names of third parties outside CBP. Non-public intelligence information was also withheld.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to non-government, third party names and contact information, disclosure of which would constitute a clearly unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to personnel names and contact information, disclosure of which could reasonably be expected to constitute |

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

|  |  |  |  |  | an unwarranted invasion of personal privacy. Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.<br><br>Exemptions (b)(6) and (b)(7)(C) were also applied to CBP internal email addresses because release of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy and would increase risk of unauthorized access to the Agency's IT system.<br><br>Exemption (b)(7)(E) intelligence information collected by CBP.  This information could be used to aid individuals seeking to violate immigration and customs laws and regulations in circumventing the law by taking proactive steps to alter their behavior to further conceal criminal activity, deprive the Agency of useful law enforcement data, or predict the Agency's investigative strategy to avoid detection, and otherwise countering operations and investigative actions taken by the Agency during enforcement operations at the border. |
|---|---|---|---|---|---|
| 4,5 | 02/01/2019 thru 02/21/2019 | 1-21/21 1-31/31 | February 24, 2021<br><br>Emails between CBP officials and individuals | (b)(6) (b)(7)(C) | The documents were released in their entirety with the exception of email addresses, identifying titles, phone numbers, specific employee names. |

14

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | and groups within CBP forwarding Queue Management Report for Eagle Pass | | Exemptions (b)(6) and (b)(7)(E) were applied to CBP internal email addresses. Release of this information would create and unwarranted invasion of personal privacy and increase the risk of unauthorized access to the Agency's IT system. |
|---|---|---|---|---|---|
| 6 | 02/01/2019 thru 02/26/2019 | 1-90/90 | February 24, 2021<br><br>Emails between CBP officials, between February 1-26, 2019, regarding Central American Caravans and Migration crisis flow. | (b)(6)<br>(b)(7)(C)<br>(b)(7)(E) | The entire email thread was released with the exception of email addresses, identifying titles, phone numbers and specific employee names. The document includes also information compiled for law enforcement purposes, including staffing numbers, sensitive intelligence information, maps created for law enforcement purposes, CBP internal tracking numbers, and confidential sources of information which were also withheld.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to personal identifying information to protect the individuals from an unwarranted invasion of privacy. Internal CBP email addresses were also withheld as their release could increase the risk of unauthorized access to the Agency's IT system.<br><br>Exemption (b)(7)(E) was applied to CBP internal case numbers because release of this information would increase risk of unauthorized access to the Agency's IT system.  Additionally, knowledge of when and under what circumstances CBP collects and analyzes information would allow criminals to modify their behavior so they can avoid being the subject of an investigation.  Release of this information would also |

15

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | |
|---|---|---|---|---|---|
| | | | | | enable an individual knowledgeable in CBP databases to improperly access the system, facilitate navigation or movement through the system, allow manipulation or deletion of data and/or interfere with enforcement proceedings.<br><br>Exemption (b)(7)(E) was applied to non-public information about law enforcement techniques and procedures, including staffing numbers, sensitive intelligence information, maps created for law enforcement purposes, CBP internal tracking the law by numbers, and confidential sources of information. Release of this information could allow individual to circumvent the law by revealing routes used by other violators, routes patrolled by CBP, and tools used by CBP to identify and stop violators. Revealing sources of information obtained by CBP would allow violators to avoid interaction with those sources.<br><br>Exemption (b)(7)(E) was also applied to CBP staffing information. Staffing numbers may reveal areas that are difficult to staff and locations that are frequently understaffed and where CBPs ability to perform its mission is more difficult. |
| 7,8 | 01/01/2019 thru 01/31/2019 | 1-21/21 1-31/31 | February 24, 2021<br><br>Combined January and February Queue Management Reports | (b)(7)(E) | The reports were released in their entirety with the exception of confidential, non-public information, regarding CBP capacity. Specifically, identification of the percentages of credible fear migrant capacity at the Ports of Entry in the Laredo Field Office. |

16

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | | | | | Exemption (b)(7)(E) was applied to non-public information about CBP capacity.  Release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed CBP capacity. |
|---|---|---|---|---|---|
| 9 | 01/02/2019 thru 02/21/2019 | 1-18/89 | February 24, 2021<br><br>06-combined MCAT E-mails<br><br>Emails between CBP officials, from January 2, 2019 through January 17, 2019, regarding the MCAT Daily Report | (b)(6) (b)(7)(C) (b)(7)(E) | The entire email thread was released with the exception of email addresses, identifying titles, phone numbers and specific employee names and internal group email addresses within CBP.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to personnel names and contact information, including email addresses, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.  Release of CBP email addresses also increases the risk of unauthorized access to the Agency's IT systems.<br><br>Exemption (b)(7)(E) was applied to CBP group email addresses.  Release of CBP email addresses increases the risk of unauthorized access to the Agency's IT systems. |
| 9 | 1/18/2019 thru | 19-89/89 | February 24, 2021 | (b)(6) (b)(7)(C) | The entire email thread was released with the exception of email addresses, identifying titles, phone |

17

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| | 02/21/2019 | | 06-Combined MCAT E-mails<br><br>Emails between CBP officials and individuals and groups within CBP distributing MCAT Daily Report | (b)(7)(E) | numbers and specific employee names and internal group email addresses within CBP.  This document also includes sensitive information regarding capacity at various Ports of Entry. Overall capacity by Field Office has been released.<br><br>Exemptions (b)(6) and (b)(7)(C) were applied to personnel names and contact information, including email addresses, disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.  Furthermore, this field has been redacted to protect individuals from unwanted contact, annoyance, or harassment in their personal, professional, and/or private lives.  Release of CBP email addresses also increases the risk of unauthorized access to the Agency's IT systems.<br><br>Exemption (b)(7)(E) was also applied to group email addresses within CBP.  Release of such information increases the risk of unauthorized access to CBP systems.<br><br>Exemption (b)(7)(E) was applied to capacity at individual ports of entry because release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed the capacity. |

18

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| 10 | 01/18/2019 thru 02/21/2019 | 1-110/110 | February 24, 2021  MCAT Reports | (b)(7)(E) | The reports were released in their entirety with the exception of non-public information regarding capacity at individual ports of entry.  Capacity numbers and percentages by Field Office were released.  Exemption (b)(7)(E) was applied to capacity at individual ports of entry because release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed the capacity. . |
|---|---|---|---|---|---|
| 11 |  | 1-34/34 | February 24, 2021 | (b)(7)(E) | These documents contain CBP intelligence assessments regarding migration.  The documents were withheld in full.  Exemption (b)(7)(E) was applied to withhold these documents in full.  The exemption includes information explaining law enforcement techniques and procedures including CBP assessments of migration routes and locations monitored by CBP. Such information is not generally known or publicly disclosed. Disclosure of the assessments and locations monitored would be debilitating and detrimental to both CBP and the law enforcement community, and it would enable individuals to alter their migration routes and avoid locations known to CBP, adopt new methods of operation, relocate, and effectuate other countermeasures, thereby hindering CBP's ability to secure the border. |

19

**U.S. Customs and Border Protection (CBP) Vaughn Index**
**Hoffmann v. U.S. Customs and Border Protection,**
**Case No. 2:20-cv-06427-AB**

| 12 | 1/1/2019 through 2/26/2019 | 1-175/175 | July 13, 2022 | (b)(7)(E) | These documents contain U.S. Customs and Border Protection Migration Crisis Action Team reports. The reports were released in their entirety with the exception of non-public information regarding capacity at individual ports of entry. Capacity numbers and percentages by Field Office were released.<br><br>Exemption (b)(7)(E) was applied to capacity at individual ports of entry because release of this information could assist individuals seeking to circumvent the law by allowing groups to overwhelm POEs by arriving in numbers that exceed the capacity. |