# Exhibit 1



U.S. Department of Justice

*United States Attorney*

*Eastern District of Pennsylvania*

*Eric D Gill, Assistant United States Attorney*  
*Direct Dial: (215) 861-8250*  
*Facsimile: (215) 861- 8618*  
*E-mail Address: Eric.Gill@usdoj.gov*

*615 Chestnut Street*  
*Suite 1250*  
*Philadelphia, Pennsylvania 19106-4476*  
*(215) 861-8200*

November 26, 2021

**VIA EMAIL**
Hon. Anita B. Brody
U.S. District Court Judge
Eastern District of Pennsylvania
James A. Byrne U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Karen L. Hoffmann, Esq.
*Pro Se* Plaintiff
Syrena Law
128 Chestnut Street, Suite 301A
Philadelphia, PA 19106

      Re:    *Hoffmann v. U.S. Customs and Border Protection,* 20-CV-06427

Dear Judge Brody and Ms. Hoffmann:

    Pursuant to the Judge's recent order, Dkt. No. 20, the defendant U.S. Customs and Border Protection (CBP) submits this letter and attached declarations for the Court's *in camera* review and for *pro se* plaintiff Karen Hoffmann's review.

    As the attached declarations make clear, CBP properly conducted a reasonable search for records responsive to Hoffmann's FOIA request. Regarding the review of mobile phones that seems to be the focus of Hoffmann's concerns, CBP lacks the ability to remotely pull and review WhatsApp messages[1] from the mobile phones of its employees. Instead, it must physically collect the phones and review them for responsive messages. And CBP did that – with respect to two agency employees identified by Hoffmann – and no responsive messages were found. Because CBP conducted a reasonable search, and because no responsive records have been withheld nor are there additional records to produce, there is nothing additional for CBP to do to respond to Hoffmann's FOIA request.

---

[1] WhatsApp is a free messaging and voice-over-internet-protocol service owned by Meta Platforms, Inc. (which formerly did business as Facebook, Inc.). *See* https://en.wikipedia.org/wiki/WhatsApp. WhatsApp allows users to send text messages and voice messages, make voice and video calls, and share images, documents, user locations, and other content. *See id.*

### A. Hoffmann's FOIA Request

Hoffmann filed this action on December 20, 2020, seeking relief pursuant to the Freedom of Information Act/FOIA, 5 U.S.C. §§ 552 *et seq*. Previously, on February 21, 2019, Hoffmann submitted a FOIA request for CBP records concerning:

- Correspondence and /or communications between CBP agents/employees and an individual named Hector Menchaca;
- Correspondence and /or communications between CBP agents/employees and the telephone number +52-878-703-2497;
- Communications relating to the capacity of CBP to accept asylum seekers for processing at Eagles Pass Point of Entry (Eagle Pass) from January 1, 2019 to February 21, 2019;
- Communications concerning a list of migrants waiting to present themselves at Eagle Pass from January 1, 2019 to February 21, 2019; and
- Communications concerning migrants detained from January 1, 2019 to February 21, 2019.

*See* Compl. ¶ 12. The initial deadline for CBP to respond to Hoffmann's FOIA request coincided with the outbreak of the global Covid pandemic.

### B. CBP's Search for Responsive Documents

After receiving Hoffmann's FOIA request, CBP's FOIA Division determined that that U.S. Border Patrol (USBP) was most likely to have responsive information. *See* Nov. 16, 2021 Declaration of Patrick A. Howard (Howard Decl.) ¶ 4, attached hereto. Specifically, it was determined that the Del Rio, Texas sector of the USBP was most likely to have responsive information. *Id.* ¶ 5. The Del Rio Sector searched the shared drives of offices or personnel most likely to have responsive records with the following keywords/phrases: a) Hector Menchaca; b) +52-878-703-2497; c) capacity; d) asylum; e) Eagle Pass POE; and f) detained in Piedras Negras. *Id.* The time frame searched was January 1, 2019 to April 2019. *Id.* The Del Rio Sector determined that it was unlikely to have paper records that were responsive to Hoffmann's FOIA request and thus did not search for them. *Id.* ¶ 6. Responsive records were uploaded to an online FOIA database at CBP, reviewed by CBP FOIA personnel, and then produced to Hoffmann. *Id.* ¶ 5.

In addition to the above search, CBP's FOIA division directed the enterprise email search of *all* email address mailboxes in the "cbp.dhs.gov" domain. *Id.* ¶ 7. A search was performed across all email accounts in that domain for the following keywords/subjects: a) Hector Menchaca; and b) the phone number +52-878-703-2497. Responsive records were uploaded to an online FOIA database at CBP, reviewed by CBP FOIA personnel, and then produced to Hoffmann. *Id.* ¶ 7.

CBP made two separate productions of responsive information to Hoffmann's FOIA request in January and February 2021. *Id.* CBP produced 443 pages of responsive information to Hoffmann. *Id.* Those productions were made within two months of Hoffmann filing this action. An additional 62 pages were identified as duplicates. A total of 2,210 pages of non-responsive material were not produced, as most of those documents reference a CBP employee who shares the same name as Mr. Hector Menchaca. *Id.*

### C. Hoffmann Seeks WhatsApp Messages

After CBP produced the responsive information described above, the undersigned reached out to Hoffmann in mid-March 2021 to determine if the production properly satisfied her FOIA request. At this time, for the first time, Hoffmann identified WhatsApp messages sent/received by CBP personnel as information she wished to receive.

CBP uses a mobile device management system named Airwatch to manage the CBP's mobile devices. October 8, 2021 Declaration of John MacNeil ¶ 1, attached hereto (MacNeil Decl.). Airwatch allows CBP's information technology staff to deploy, secure and mange mobile devices, including applications and data. *Id.* ¶ 3. Airwatch can identify applications installed on enrolled devices, but not devices that are not currently enrolled. *Id.* ¶ 5. Thus, if an agency employee receives a new mobile device, Airwatch will be able to verify the applications installed on that device but not the older device that has ceased to be enrolled in Airwatch. *Critically, Airwatch does not have the capability to see or extract data in any installed applications. Id.* ¶ 6 (emphasis added). Airwatch does not have the capability to remotely access the data on mobile devices via the cloud – it can only tell if a device has an application installed. *Id.* Accordingly, to search for responsive information on a CBP agent or employee's mobile device, the phone must be manually reviewed.

Because CBP could not remotely search CBP mobile devices, Hoffmann was asked to identify CBP employees whom she believed had responsive information. Hoffmann named two individuals: the Port Director for U.S. Border Patrol Station Eagle Pass (Paul Del Rincon) and the Assistant Port Director (Peter Macias). MacNeil Decl. ¶ 2. Both Del Rincon and Macias had been given new mobile devices in February 7, 2020 and January 6, 2020, respectively. *Id.* ¶ 4. Because CBP could not remotely access Del Rincon or Macias' mobile devices, it arranged to have their CBP mobile devices reviewed in person. On May 5, 2021, Del Rincon's active CBP mobile device was inspected and no responsive information was found. June 22, 2021 Declaration of David Garcia ¶¶ 1-2, attached hereto. On May 5, 2021, Macias' active CBP mobile device was inspected and no responsive information was found. June 23, 2021 Declaration of Bob B. Parker ¶¶ 1-2, attached hereto. CBP then took additional steps to obtain the non-active mobile devices used by Del Rincon and Macias during the relevant time period of January 1, through February 25, 2019. November 18, 2021 Declaration of Michael McGehee ¶¶ 2-4, attached hereto. A visual inspection of Del Rincon's non-active mobile device yielded no responsive information. *Id.* ¶ 2. The CBP has been unable to recover Macias' non-active mobile device to verify if there is any responsive information. ¶ 4.

### D. Conclusion

As demonstrated by the attached declarations, CBP has produced all responsive, non-privileged documents in its possession and control. CBP made good faith efforts to conduct its search, using methods which can be reasonably expected to produce information to which Hoffmann is entitled. CBP acknowledges that it bears the burden of proving the reasonableness of its search. *See Powell v. United States Dep't of Treasury Office of Foreign Assets Control*, 317 F. Supp. 3d 551, 554 (D.D.C. 2018) (citing *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)). The "relevant inquiry is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Abdelfattah v. U.S. Dep't of Homeland*

3

*Security*, 488 F.3d 178,182 (3d Cir. 2007) (emphasis in original) (quote omitted). "The adequacy of a search focuses on the appropriateness of the search methods used and not on what the search produces or does not produce." *Jackson v. United States General Services Administration*, 267 F. Supp.3d 617, 622 (E.D. Pa. 2017) (internal quotations omitted). Indeed, CBP took additional steps in this matter to ensure that responsive information was not withheld from Hoffmann by manually inspecting the mobile devices (both active and nonactive) of CBP employees identified by Hoffmann. Accordingly, no additional action by CBP is necessary because no additional responsive, non-privileged information remains to be produced.

CBP looks forward to the teleconference scheduled for December 14, 2021 to discuss whether any additional steps are appropriate in this matter or whether it should be dismissed as moot.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney

*/s/ Eric D. Gill*
ERIC D. GILL
Assistant United States Attorney

Attachments