UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN L. HOFFMANN, ) <br> ) <br>    *Plaintiff,* ) <br> ) <br> v. ) <br> ) <br> U.S. CUSTOMS AND BORDER PROTECTION, ) <br> ) <br>    *Defendant.* ) <br> ) | Civil Action No.: 2:20-CV-06427 |

## DECLARATION OF KAREN L. HOFFMANN

Pursuant to 28 U.S.C. § 1746, I, Karen Hoffmann, make the following declaration, which is based on my personal knowledge and observation except as indicated.

1. I am a Philadelphia-based immigration lawyer. I provide legal advice and representation to parents and children fleeing persecution and torture as they seek humanitarian protections, including asylum, in the United States. I assist asylum seekers in litigation to enforce their rights and ensure the U.S. government honors its obligations to them under U.S. and international laws. *See Herrera-Reyes v. Attorney General*, 952 F.3d 101 (3d Cir. 2020).

2. My team received the 2019 Pro Bono Award from the U.S. District Court for the Northern District of Illinois for litigation to reunite families separated at the U.S.-Mexico border. *W.S.R. v. Sessions*, 318 F. Supp. 3d 1116 (N.D. Ill. 2018).

3. In December 2018, I traveled to Tijuana, Baja California, Mexico to volunteer with transnational legal non-profit Al Otro Lado (AOL).

1

4. While there, I assisted AOL in counseling the thousands of asylum seekers stranded in Mexico as a result of U.S. border policies cutting off asylum access at Ports of Entry (POEs).

5. I visited emergency shelters to provide legal orientation and screening, documented repressive tactics employed against asylum-seekers by U.S. and Mexican law enforcement officials, and witnessed firsthand the human toll of cutting off access to legal protections.

6. I also provided legal accompaniment for asylum seekers attempting to present their claims at POEs.

7. .In February 2019, I received a request for assistance from a colleague working in Eagle Pass and Piedras Negras to respond to the apparently unlawful imprisonment of up to 2,000 asylum-seekers in a warehouse complex on the Mexico side of the River.

8. I learned from U.S. legal workers who visited the detention camp, shelters, and bridge to the Port of Entry that hundreds of Mexican police, military, and immigration officials had surrounded the complex and imprisoned people inside.

9. To assist colleagues and the public in understanding CBP's role in the unlawful detention and turnbacks of asylum seekers in Piedras Negras during the February 2019 period, and to document any violations of U.S. or international law that may afford those asylum seekers legal protection in future proceedings before U.S. tribunals, I filed the Freedom of Information Act request at issue in this litigation on February 21, 2019.

10. On December 22, 2020, I filed the Complaint initiating the instant action.

11. On April 4, 2021, I received an email from CBP's counsel stating that "the agency has completed its response to your request . . ."

12. On July 2, 2021, I received another email from CBP's counsel stating that "the Agency has produced all non-privileged responsive documents."

13. In its August 4, 2021 Answer, paragraph 4, CBP admitted that "as of the time that Hoffman [sic] filed her Complaint defendant CBP had not yet produced responsive, non-privileged materials . . ."

14. Paragraph 5 of CBP's Answer "[d]enies that defendant CBP's search and production have been inadequate . . ."

15. In Paragraph 18 of its Answer: "CBP avers further that, since Hoffman's filing of her Complaint, CBP has produced all responsive, non-privileged documents to Hoffman."

16. CBP's fourth defense in its Answer, page five, further claims that "[i]n neither her FOIA request nor her Complaint in this action did Hoffman ever specify 'What's App' messages, and CBP was unaware of their existence until after Hoffman filed her Complaint."

17. The September 16, 2021 Joint Discovery Plan states on page 3 that "[t]he Agency has produced all responsive, non-privileged documents in its possession and control."

18. In its November 26, 2021 letter to Judge Brody, CBP again claimed that "no responsive records have been withheld nor are there additional records to produce . . ."

19. In a December 10, 2021, letter to this Court, I pointed out numerous deficiencies in the agency's search and production.

20. In response, on February 24, 2022, CBP produced hundreds of pages of new records responsive to my original request, contrary to its numerous claims of having produced all responsive documents.

21. In a March 9, 2022 status conference and March 18, 2022 letter, through counsel, I listed the numerous deficiencies and obvious gaps in CBP's most recent production.

22. In an April 5, 2022 telephone conference, CBP indicated that it would soon provide me with missing records and respond to my December 10, 2021 and March 18, 2022 deficiency letters.

23. On April 8, 2022, defendant CBP produced nothing.

24. On April 11, 2022, my counsel inquired about CBPs production and was told that a response would be forthcoming on April 15, 2022.

25. On April 15, 2022, CBP produced nothing.

26. On April 18, 2022, my counsel inquired about CBP's production and was informed that a response would be forthcoming "in a few days."

27. Another week passed and CBP produced nothing.

28. On April 25, 2022, my counsel inquired about CBP's production and was informed that defense counsel was "still working to get additional info from the agency" and that the information would be shared as soon as possible.

29. Two more weeks passed and CBP produced nothing.

30. On May 9, 2022, my counsel inquired, for a fourth time, about the CBP's production. There was no production in response.

31. Instead, on May 19, 2022, defense counsel provided a letter stating that:(1) CBP would seek summary judgment if plaintiff continued to pursue her requests; (2) that missing queue management reports would be produced "as soon as [possible]" without a clear promise as to when this would occur or explanation of the delay; (3) that plaintiff has failed to substantiate her challenges to agency redactions (which are the agency's burden

to establish–not plaintiff's to overcome); and (4) that further investigation is too burdensome to undertake.

32. On July 29, 2022, CBP filed its Motion for Summary Judgment.

33. CBP has never provided a written response to my December 10, 2021, or March 18, 2022 deficiency letters.

34. Upon receiving and analyzing FOIA records from CBP as a result of this litigation, it became clear to my colleagues and I that the full extent of CBP's unlawful actions has not been acknowledged or well-documented.

35. To remedy that concern, and ensure it does not lead to future illegal treatment of migrants and refugees, I have shared these records widely with attorneys, human rights workers, international legal experts, academics, and interested media.

36. These advocates and media organizations have, in turn, shared key information in the records with the broader public. *See* https://theintercept.com/2022/03/22/cbp-asylum-mexico-piedras-negras.

37. Without a full and complete picture of how and why CBP carried out its unlawful activities, the public, policymakers, and courts will risk seeing these illegal activities repeat themselves in the future.

38. It is this objective--preventing future harm to vulnerable people on the move at the hands of unlawful actions by the U.S. and its migration-control partners--that has led me to continue critically questioning the agency's representations that it produced all responsive records this case.

On this August 26, 2022, I certify the above to be true to the best of my knowledge under penalty of perjury.

                                                               *Karen H.*
Karen L. Hoffmann, Esq.
Law Offices of Stanley J. Ellenberg, Esq., PC
Two Penn Center
1500 John F. Kennedy Blvd.
Suite 1825
Philadelphia, PA 19102
(215) 790-1682
karen@sellenberglaw.com