**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

KAREN L. HOFFMAN,    :
  Plaintiff,     :
         :   CIVIL ACTION
 v.        :   NO. 20-6427
         :
U.S. CUSTOMS AND BORDER
PROTECTION     :
  Defendants.   :

**June 28, 2023**            **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

Plaintiff Karen L. Hoffman brings this action against U.S. Customs and

Border Protection ("CBP") for alleged violations of the Freedom of Information

Act, 5 U.S.C. § 552 ("FOIA"). Before the court are cross-motions for summary

judgment.

**I. BACKGROUND**

This litigation arises out of CBP's processing of migrants seeking asylum at

the United States-Mexico border between January 1, 2019 and February 21, 2019.

**A. CBP's "Metering" Policy**

In 2016, CBP began to use what have since become known as "metering"

and "queue management" policies to control the number of asylum seekers

presenting themselves at Ports of Entry ("POEs") on the Southwest border. *See Al*

1

*Otro Lado, Inc. v. Mayorkas*, No. 17-CV-02366-BAS-KSC, 2021 WL 3931890, at

*2 (S.D. Cal. Sept. 2, 2021). This consisted of CBP officers coordinating with

Mexican immigration officials to limit the number of asylum seekers presenting

themselves at the border at any given time, and turning away asylum seekers when

Mexican officials did not sufficiently "control the flow." *Id.* at *9. Asylum seekers

who were turned away were told to speak to Mexican officials to be added to a list,

and spend further time in Mexico waiting for an appointment at a POE. *Id.* at *17.

CBP's rationale for using "metering" was that the number of asylum seekers

exceeded the capacity of POEs to process them. *Id.* at *3-4.

However, the Department of Homeland Security Office ("DHS") of

Inspector General ("OIG") has since found that DHS and CBP artificially limited

capacity by reassigning staff away from asylum processing; stopping routine

processing of most asylum seekers at several POEs; and failing to use all available

detention space. OIG, DHS, *CBP Has Taken Steps to Limit Processing of*

*Undocumented Aliens at Ports of Entry*, OIG-21-02 (2020). In 2021, CBP formally

rescinded its "metering" policies. *See* U.S. Customs and Border Protection,

Guidance for Management and Processing of Undocumented Noncitizens at

Southwest Border Land Ports of Entry (Nov. 1, 2021). In addition, a district court

in the Southern District of California entered a declaratory judgment on August 5,

2022, holding that turning back asylum seekers violated CBP's ministerial

inspection and referral duties. *Al Otro Lado, Inc. v. Mayorkas*, 619 F.Supp.3d 1029 (S.D. Cal. 2022).

### B. Karen Hoffman's FOIA Request

Karen L. Hoffman, the Plaintiff in this action, is a Philadelphia-based attorney who provides legal counsel to asylum seekers. ECF No. 37-5 ¶ 1. In February 2019, when the "metering" policies were still in effect, Ms. Hoffman received a request for assistance from a colleague working at the Eagle Pass Port of Entry ("Eagle Pass POE") on the United States side of the border, and in Piedras Negras, on the Mexico side of the border. *Id.* ¶ 7. Specifically, Ms. Hoffman's colleague told her she needed help in responding to the detention of up to 2,000 migrants seeking asylum. *Id.* Ms. Hoffman's belief that this detention was unlawful ultimately led to her filing the FOIA request at issue in this litigation. *Id.* ¶ 9.

During the period that Ms. Hoffman was working at the Southwest border, CBP officials working at Eagle Pass POE were in communication with Hector Menchaca, a private citizen working in a semi-official capacity for Mexican state authorities. In an email from Eagle Pass Port Director Paul Del Rincon to Assistant Port Director Pete Macias and other CBP officials, Del Rincon describes Mr. Menchaca as "the new [point of contact] for anything and everything migrants." ECF No. 36-1. Contemporaneous reporting suggests that Mr. Menchaca would

have coordinated with CBP officials to prevent asylum seekers from reaching

Eagle Pass POE and to maintain a "wait list" of migrants on the Mexican side of

the border. ECF No. 37 at 12.[1]

On February 21, 2019, Ms. Hoffman filed a FOIA request with CBP seeking

the following categories of records:

- Any and all correspondence and/or record of communications between CBP agents or employees and Hector Menchaca.

- Any and all correspondence and/or record of communications between CBP agents or employees and the telephone number +52-878-703-2497.

- Any and all communications relating to the capacity of CBP to accept asylum seekers for processing at the Eagle Pass POE from January 1, 2019 to February 21, 2019.

- Any and all internal or external CBP communications regarding a list of migrants awaiting their turn to present themselves at the Eagle Pass POE from January 1, 2019 to February 21, 2019.

- Any and all internal or external CBP communications regarding migrants detained in Piedras Negras, Mexico, from January 1, 2019 to February 21, 2019.

ECF No. 1 ¶12.

On April 5, 2019, after failing to receive a response from CBP, Ms.

Hoffman appealed what she deemed a denial of her FOIA request pursuant to 6

---

[1] *See* Human Rights First, *Barred at the Border: Wait "Lists" Leave Asylum Seekers in Peril at Texas Ports of Entry Human Rights First* (Apr. 2019), https://humanrightsfirst.org/wp-content/uploads/2022/10/BARRED_AT_THE_BORDER.pdf;
American Immigration Council, *Asylum and Metering Turnbacks* (Mar. 2021),
https://www.americanimmigrationcouncil.org/sites/default/files/research/metering_and_asylum_turnbacks_0.pdf.

C.F.R. § 5, 8. *Id.* ¶ 3, 15. Once again, Ms. Hoffman received no response. Ms. Hoffman then filed this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). *Id.*

### C. The Instant Litigation

A lengthy back-and-forth ensued between Ms. Hoffman and CBP over how best to conduct a search for responsive records. In July 2021, CBP stated to Ms. Hoffman via email that it had completed its record productions, and its response to her request was therefore complete. ECF No. 37-5 ¶ 12. On August 4, 2021, CBP filed its Answer to Ms. Hoffman's Complaint. ECF No. 12.

In his sworn Declaration (ECF No. 35-1), FOIA Division Branch Chief Patrick A. Howard details the steps Defendant took to carry out its search over the course of this litigation. CBP's FOIA Division determined that the that the U.S. Border Patrol Del Rio Sector was most likely to have records responsive to Ms. Hoffman's request because that Sector was tasked with coordinating and administering the Eagle Pass POE. ECF No. 35-1 ¶¶ 5-6. The Del Rio Sector then searched the shared drives most likely to have responsive records with the following six keywords and phrases: 1) Hector Menchaca; 2) +52-878-703-2497; 3) capacity; 4) asylum; 5) Eagle Pass POE; and 6) detained in Piedras Negras. *Id.* ¶ 5. CBP did not search for paper records because all information during the period in question was exchanged electronically. *Id.* ¶ 7.

In addition to the Del Rio Sector shared drives search, CBP's Office of Information Technology also conducted a search of all email inboxes in the cbp.dhs.gov domain, covering the period from January 1, 2019 to February 25, 2019 for the following two key phrases: 1) Hector Menchaca; and 2) +52-878-703-2497. *Id.* ¶ 8. This resulted in the production of 443 pages of responsive records to Ms. Hoffman in January and February 2021. *Id.* ¶ 5.

Ms. Hoffman also expressed to CBP that agents' mobile devices were likely sources of responsive records in the timeframe of her request. ECF No. 37-4. Specifically, in response to a CBP inquiry, she identified the mobile devices of Eagle Pass Port Director Paul Del Rincon and Assistant Port Director Pete Macias as likely sources of responsive records, as Mr. Del Rincon and Mr. Macias would have been likely to communicate with Mr. Menchaca "often using WhatsApp." *Id.* CBP began its inquiry into the use of WhatsApp on Mr. Del Rincon's and Mr. Macias's mobile devices on April 13, 2021. ECF No. 35-2 ¶ 2. Because CBP was unable to remotely access Mr. Del Rincon's and Mr. Macias's mobile devices, CBP employees conducted visual, in-person inspections focusing on the WhatsApp application and found no responsive records. ECF No. 35-3 ¶¶ 1-2; ECF No. 35-4 ¶¶ 1-2. CBP also took steps to obtain the mobile devices in use by Mr. Del Rincon and Mr. Macias during the period of January 1, 2019 to February 25, 2019. ECF No. 35-5 ¶¶ 2-4. Mr. Del Rincon's deactivated mobile device had had its memory

wiped and contained no responsive information; CBP was unable to locate Mr. Macias's deactivated mobile device. *Id.*

Finally, after CBP concluded its mobile device search, Ms. Hoffman requested a search of Office of Field Operations ("OFO") records. ECF No. 35-1 ¶ 13.[2] Mr. Howard learned that OFO had already conducted a search for the period from January 1, 2019 to February 26, 2019 on the Laredo Ops Shared Drive, but had failed to properly upload documents for review. *Id.* This search resulted in the production of 393 pages of Migrant Crisis Action Team ("MCAT") daily reports and emails to Ms. Hoffman on February 24, 2022. *Id.*[3] On July 13, 2022, CBP produced to Ms. Hoffman additional "queue management reports" that were missing from the initial production. *Id.* ¶ 14. On July 26, 2022, CBP produced unredacted versions of emails which had already been produced, removing the redactions for the name "Hector Menchaca." *Id.*

On May 19, 2022, in response to several inquiries from Ms. Hoffman about what she termed ongoing deficiencies in record production, CBP indicated it would seek summary judgment. ECF No. 37-5 ¶ 31.

On May 26, 2022, I set a briefing schedule for dispositive motions. ECF No.

---

[2] OFO is the component of CBP responsible for administering ports of entry.
[3] MCAT was a team of CBP and DHS components established by the CBP Commissioner in October 2016, and headed by Border Patrol's Deputy Chief. MCAT was tasked with coordinating a response to the migration "surge" along the Southwest border. *Al Otro Lado, Inc. v. Mayorkas*, No. 17-CV-02366-BAS-KSC, 2021 WL 3931890, at *2 n.6 (S.D. Cal. Sept. 2, 2021).

31. CBP filed its Motion for Summary Judgment on July 29, 2022. ECF No. 35. Ms. Hoffman filed her Cross-Motion for Summary Judgment on August 27, 2022. ECF No. 37. On April 18, 2023, I held oral argument on both parties' motions. Following oral argument, I ordered Ms. Hoffman to file a statement of interest with the Court outlining her position as to three questions: 1) proposed search terms to be employed in a revised records search; 2) the use of encrypted chat applications on CBP devices during the period encompassed by her request; and 3) the alleged failure by CBP to preserve responsive records after Ms. Hoffman filed her original request. ECF No. 47. Ms. Hoffman filed her statement of interest on May 10, 2023. ECF No. 48. CBP filed its response on May 24, 2023. ECF No. 49.

## II. LEGAL STANDARD

Under Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . " *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable factfinder to return a verdict for the nonmoving party. *Id.* In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

(1986). Furthermore, "the court is obliged to take account of the entire setting of the case on a Rule 56 motion." 10A Charles Alan Wright & Arthur R. Miller, et al., Federal Practice & Procedure § 2721 (4th ed. 2020); *see also Brown v. Borough of Mahaffey, Pa.*, 35 F.3d 846, 850 (3d. Cir. 1994) (directing the district court to consider the "entire record" on remand).

The summary judgment standard is the same for cross-motions as it is when only one party moves for summary judgment. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016). When facing cross-motions for summary judgment, the "court must rule on each party's motion on an individual and separate basis, determining, for each side, whether judgment may be entered in accordance with the Rule 56 standard." *Id.* (citations and internal quotation marks omitted). "Both motions must be denied if the court finds that there is a genuine dispute of material fact." 10A Wright & Miller, Federal Practice & Procedure § 2720.

FOIA imposes an obligation on government agencies to make their records available to the public upon request. 5 U.S.C. § 552. "Under the FOIA, an agency has a duty to conduct a reasonable search for responsive records." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (citation omitted). Once an agency has conducted a reasonable search, the agency must produce all responsive records, unless those records fall under one of the nine specific

exemptions enumerated in the FOIA statute. *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1049 (3d Cir. 1995) (citing 5 U.S.C. § 552(b)).

"FOIA creates a presumption favoring disclosure[.]" *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1163 (3d Cir. 1995). The FOIA statute "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). An inadequate search for records constitutes an improper withholding under FOIA. *Maydak v. U.S. Dep't of Justice¸* 254 F.Supp.2d 23, 44 (D.D.C. 2003) (citing *Weisberg v. Dep't of Justice¸* 705 F.2d 1344, 1351 (D.C. Cir. 1983)). Consistent with the jurisdiction conferred by the FOIA statute, the court may order an agency to conduct a revised search to cure any inadequacies in its previous search. *See, e.g., New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 70 (D.D.C. 2019); *Aguirre v. SEC*, 551 F.Supp.2d 33, 62 (D.D.C. 2008); *Shapiro v. Dep't of Justice*, 214 F.Supp.3d 73, 79 (D.D.C. 2016).

## III. DISCUSSION

Before the Court are cross-motions for summary judgment. Defendant has moved for summary judgment on the basis that its search for responsive records was adequate, and that it properly withheld or redacted responsive records in

accordance with applicable FOIA exemptions. Plaintiff has moved for summary judgment in her favor on the basis that Defendant's search was inadequate, and that Defendant improperly withheld or redacted responsive records.

Because Third Circuit precedent dictates that I rule on each motion on an individual and separate basis, I will first consider Defendant's motion as to the adequacy of its search before proceeding to consider Plaintiff's motion. For the reasons set out below, I will deny Defendant's motion, and grant in part and deny in part Plaintiff's motion.

### A. The Adequacy of the Defendant's Searches

FOIA imposes a duty on agencies to conduct a reasonable search for responsive records. *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007). "The adequacy of an agency's search is measured by a 'standard of reasonableness' and is 'dependent upon the circumstances of the case.'" *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983) (quoting *McGehee v. CIA*, 697 F.2d 1095, 1100-01 (D.C. Cir. 1983); *Founding Church of Scientology v. NSA*, 610 F.2d 824, 834 (D.C. Cir. 1979)). "To succeed on summary judgment in a FOIA case, 'the defending agency must show beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Hetznecker v. NSA*, No. 16-CV-945, 2017 WL 3617107, at *2 (E.D. Pa. Aug. 23, 2017) (Schiller, J.) (quoting *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007)).

The agency has the burden of proving the reasonableness of its search. *Manatt v. U.S. Dep't of Homeland Sec.*, 473 F.Supp.3d 409, 416 (E.D. Pa. 2020) (Wolson, J.). Compared to judicial review of other agency actions, "FOIA adopts a more rigorous form of judicial review, 'expressly placing the burden on the agency to sustain its action and directing the district courts to determine the matter de novo.'" *Samahon v. FBI*, 40 F.Supp.3d 498, 507 (E.D. Pa. 2014) (Robreno, J.) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 755 (1989)) (cleaned up).

When "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). "[T]he requesting party may defeat the agency's motion for summary judgment by producing evidence that raises a substantial doubt that the search was adequate." *Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F.Supp.2d 749, 766 (E.D. Pa. 2008) (Savage, J.) (citing *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C.Cir.1999)); *see also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994) (requesting party may defeat summary judgment by providing "some tangible evidence" that defendant has not met its burden). If there are "positive indications of overlooked materials," the court should deny summary judgment. *Valencia-Lucena*, 180 F.3d at 325 (quoting *Founding Church of Scientology*, 610 F.2d at 837) (internal quotation marks

omitted).

In determining whether the defending agency has conducted a reasonable search, "[t]he relevant inquiry is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Abdelfattah*, 488 F.3d at 182 (quoting *Weisberg*, 745 F.2d at 1485)*; see also SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991) ("Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them.").

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). However, "if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." *Valencia-Lucena*, 180 F.3d at 327. "[I]n some cases, failure to find a record that once existed, coupled with a conclusory affidavit about the methodology of the search, can weaken the agency's claim for summary judgment." *Aguiar v. DEA*, 865 F.3d 730, 739 (D.C. Cir. 2017) (citing *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370-71 (D.C. Cir. 1980)).

To demonstrate the adequacy of its search, the agency should provide a

"reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena*, 180 F.3d at 326) (internal quotation marks omitted). Agency affidavits are presumed to have been made in good faith. *Cozen O'Connor*, 570 F.Supp.2d at 766 (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

### 1. Defendant's Argument on Adequacy

Defendant argues that it conducted a reasonable and adequate search, and lists the four places it searched for responsive records: 1) the Del Rio Sector Shared Drives; 2) all email accounts in the cbp.dhs.gov domain; 3) Mr. Del Rincon's and Mr. Macias's mobile devices; and 4) the OFO Laredo Ops Shared Drive. ECF No. 35 at 14. Defendant avers that that all responsive records not exempt from publication under FOIA have been produced. *Id.*; ECF No. 38-1 ¶ 3.

I presume that the factual assertions in the affidavits are true unless contradicted by affidavits or other documentary evidence submitted by the nonmoving party – in this case, Ms. Hoffman. *Wilson v. U.S. Dep't of Transp.*, 730 F.Supp.2d 140, 148 (D.D.C. 2010) (citing *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992)). However, several deficiencies in CBP's search render it impossible for a court to conclude at this stage that its search was adequate. Some of these deficiencies were raised by Plaintiff in her response to Defendant's motion

for summary judgment. ECF No. 36. Other deficiencies were raised by Plaintiff in her cross-motion for summary judgment (ECF No. 37) and will be addressed more fully in Part III.A.2 of this Memorandum.

### a.  The Scope of Defendant's Search

First, Defendant argues that the scope of its search was proper. CBP identified the Del Rio Sector Shared Drives as the most likely source for responsive records because it was tasked with administering and coordinating the Eagle Pass POE. ECF No. 35-6 ¶ 6. Defendant further explains that CBP did not search for paper records because the records sought were uniformly electronic records. *Id.* ¶ 7. The decisions to focus on the Del Rio Sector, and to search only for electronic records, were both appropriate given the factual context of this case. *See Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). In these respects, the scope of Defendant's search was adequate. There can also be no question that, as to scope, a search of all email accounts in the cbp.dhs.gov domain is satisfactory.

Defendant also argues, however, that the visual inspections of Mr. Del Rincon's and Mr. Macias's mobile devices were conducted reasonably so as not to create an undue burden. Specifically, Defendant argues that its search, which focused on the WhatsApp encrypted chat application, was adequate for two reasons: 1) the two active mobile devices were inspected in person; and 2) any

responsive messages on the two inactive mobile devices – one of which had had its memory wiped, and one of which has not been located – would have been transferred over with the Mr. Del Rincon's and Mr. Macias's phone numbers. ECF No. 35-3 ¶¶ 1-2; ECF No. 35-4 ¶¶ 1-2; ECF No. 35-6 ¶ 11.

For a number of reasons that I address more extensively below in Part III.A.2.b, I cannot conclude that the scope of Defendant's search with respect to Mr. Del Rincon's and Mr. Macias's mobile devices was adequate. Suffice it to say here that Defendant must offer more than a perfunctory unsworn declaration about a "visual inspection" and a bare, unelaborated statement that any responsive records would have been transferred over from the agents' inactive devices, to show that the scope of CBP's search was adequate. Plaintiff's request for a search of these two devices (ECF No. 37-4), which cited a report by an international human rights organization describing telephone communications between CBP agents at Eagle Pass and Mr. Menchaca, sufficiently provided Defendant with positive indications that responsive records had been overlooked. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999). Nor do Defendant's "conclusory" declarations regarding CBP's visual inspections meet the criteria of a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials were searched." *Id*.

Accordingly, the scope of Defendant's search was not adequate.

### b. Defendant's Search Terms

Next, Defendant argues that its search terms were reasonably calculated to uncover all responsive records to Plaintiff's request. In support of its position, Defendant cites a line of decisions from courts in the D.C. Circuit that have held that agencies have "discretion" in crafting search terms and should not use "superfluous" search terms. *See, e.g.*, *Cause of Action Inst. v. Internal Revenue Serv.*, 316 F.Supp.3d 99, 110 (D.D.C. 2018); *Tushnet v. U.S. Immig. & Customs Enf't*, 246 F.Supp.3d 422, 434 (D.D.C. 2017); *see also Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) ("FOIA, requiring as it does both systemic and case-specific exercises of discretion and administrative judgment and expertise, is hardly an area in which the courts should attempt to micro manage the executive branch."). As another district court has more colorfully put it, "for lawyers and judges to dare opine that a certain search term or terms would be more likely to produce information than the terms that were used is truly to go where angels fear to tread." *United States v. O'Keefe*, 537 F.Supp.2d 14, 24 (D.D.C. 2008). However, courts must also ensure agencies comply with their duty to construe FOIA requests liberally. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

Defendant correctly argues that the terms used to search the Del Rio Sector

Shared Drives were reasonably calculated to uncover all responsive records. Those terms were: 1) Hector Menchaca; 2) +52-878-703-2497; 3) capacity; 4) asylum; 5) Eagle Pass POE; and 6) detained in Piedras Negras. ECF No. 35-6 ¶¶ 4-6. The additional search terms proposed by Plaintiff would be superfluous and unlikely to uncover further responsive records. For example, a request for information about "a list of migrants waiting to present themselves at Eagle Pass" would be covered by the key phrases "Eagle Pass POE" and "detained in Piedras Negras."

Plaintiff's arguments that these terms were not specific enough are unavailing. She points to CBP's use of the phrase "asylum" while omitting the term "asylum seekers." ECF No. 36 at 10. But she fails to explain what records the term "asylum seekers" would turn up that "asylum" would not. Accordingly, I conclude that the search terms CBP used to search the Del Rio Sector Shared Drives were adequate, appropriate, and reasonably specific.

The same cannot be said, however, for the search terms CBP used to search email inboxes in the cbp.dhs.gov domain. Those search terms were limited to two key phrases: 1) Hector Menchaca; and 2) +52-878-703-2497. ECF No. 35-6 ¶ 8. Defendant argues:

> [T]hese terms were the best means to retrieve responsive information across tens of thousands of email accounts without generating an enormous set of records that would be largely unresponsive to Hoffman's FOIA request. . . .

18

Even using the smaller set of search terms, the FOIA office still had to sort
through many non-responsive pages of email.

*Id.* ¶ 8.

Even granting the appropriate discretion to Defendant to craft its own search
terms, I cannot conclude that the key phrases CBP chose to employ in its email
search were adequate. The search terms CBP employed only encompass the first
and second parts of Plaintiff's request – correspondence and communications with
Hector Menchaca and the phone number +52-878-703-2497 – while plainly
ignoring the third, fourth, and fifth items of Plaintiff's request: 1) communications
relating to the capacity of CBP to accept asylum seekers for processing at the
Eagle Pass POE; 2) internal or external CBP communications regarding a list of
migrants waiting to present themselves at Eagle Pass POE; and 3) internal or
external CBP communications regarding migrants detained in Piedras Negras,
Mexico. ECF No. 1 ¶ 12.

When an agency claims that a search would constitute an undue burden, the
agency must "provide sufficient explanation as to why such a search would be
unreasonably burdensome." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885,
892 (D.C. Cir. 1995). A sufficient explanation should detail "the time and expense
of a proposed search in order to assess its reasonableness." *Wolf v. CIA*, 569
F.Supp.2d 1, 9 (D.D.C. 2008) *See also Am. Oversight v. U.S. Gen. Servs. Admin.*,

19

486 F.Supp.3d 306, 315 n.9 (D.D.C. 2020) ("In the context of electronic word searches, it is of no assistance to the Court for a party to claim a burden based on a claim that a particular search term would result in the retrieval of too many irrelevant records without making any attempt to quantify that burden"). At a minimum, courts require an explanation that amounts to more than "generic claims" or "conclusory statements." *New Orleans Workers' Ctr for Racial Justice v. U.S. Immigr. & Customs Enf't*, 373 F.Supp.3d 16, 35 (D.D.C. 2019); *Hall v. CIA*, 881 F.Supp.2d 38, 53 (D.D.C. 2012). Moreover, any undue burden argument must be balanced against Defendant's duty to construe FOIA requests liberally. *See Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995).

Under this standard, Defendant's bare assertion that a more thorough search would generate too many records is insufficient to explain why the use of a wider set of search terms would prove unreasonably burdensome. Defendant's argument is even more questionable considering that, as Defendant itself admits, CBP limited its search to electronic records. In 1996, Congress amended FOIA to require agencies to "make reasonable efforts to search for . . .  records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C). The purpose of this amendment is to ensure FOIA searches are not stuck in the era of filing cabinets and mimeographs. *See* H.R. Rep. 104-795, at 11 (1996) ("Agency

20

records are now created not just on pieces of paper and placed in filing cabinets.").
The amendment further defined "search" as "to review, manually *or by automated
means*, agency records for the purpose of locating those records which are
responsive to a request[.]" 5 U.S.C. § 552(a)(3)(C)-(D) (emphasis added).

The language used in crafting the electronic records search provision reflects
a recognition by Congress "that '[c]omputer records found in a database rather
than in a file cabinet may require the application of codes or some form of
programming to retrieve the information.'" *ACLU Immigrants' Rts. Project v. U.S.
Immigr. & Customs Enf't*, 58 F.4th 643, 652–53 (2d Cir. 2023) (quoting H.R. Rep.
No. 104-795, at 22 (1996)). Today's technological advances have far outpaced
what the drafters of the 1996 Amendments could have envisioned, and soared past
even the most optimistic expectations of computer scientists working in 1967,
when FOIA was first enacted. Federal agencies cannot reap the benefits of
massive, easily searchable data sets while also claiming that the size of those data
sets renders an adequate FOIA search unduly burdensome. *See Nat'l Day Laborer
Org. Network v. U.S. Immigr. & Customs Enf't Agency*, 877 F.Supp.2d 87, 111
(S.D.N.Y. 2012) ("FOIA requires the government to respond adequately to
requests from the public and defendants must learn to use twenty-first century
technologies to effectuate congressional intent."). As database search technology
continues to evolve at breakneck pace, the standard for establishing that a given

search would cause an undue burden must necessarily evolve along with it.[4]

Accordingly, to obtain summary judgment that a search for electronic records was adequate, an agency must make a detailed showing that it employed all reasonable technological efforts to conduct its search. An effort is "reasonable" insofar as it does not cause significant interference with the agency's automated information system. 5 U.S.C. § 552(a)(3)(C).

Here, no extraordinary measures are required for CBP to conduct a revised search that meets this standard for adequacy. In her Statement of Interest (ECF No. 48), Plaintiff identifies several measures CBP could have taken to perform a thorough search of email accounts without generating an overwhelming number of responsive records, including: 1) the use of Boolean operators ("and", "or"); 2) a "refinement" search technique to winnow down a large number of largely non-responsive records to a more manageable, responsive set; and 3) a more targeted search of select email accounts. ECF No. 48 at 1-4. These are only some of the many options available to CBP that it failed to even consider.

Although Defendant's search was reasonable in some discrete respects, the record contains substantial evidence calling the adequacy of CBP's search as a

---

[4] For an overview of the development of the "undue burden" rule and proposals for bringing the rule into harmony with contemporary recordkeeping practices, *see generally* Stephanie Alvarez-Jones, *"Too Big to FOIA": How Agencies Avoid Compliance with the Freedom of Information Act*, 39 Cardozo L. R. 1055 (2018).

whole into doubt. Accordingly, I must deny summary judgment for Defendant.

## 2. Plaintiff's Argument on Adequacy

Having determined that summary judgment for Defendant is inappropriate at this time, the next step is evaluating Plaintiff's Cross-Motion for Summary Judgment. In her cross-motion, Plaintiff argues that CBP's search suffered from numerous shortcomings and deficiencies that render that search inadequate under FOIA. Plaintiff is correct in several important respects, and incorrect in others. When the defendant in a FOIA action has not performed an adequate search, the court has the responsibility to use its equitable jurisdiction to cure the inadequacies. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)). If a search was adequate in some respects and inadequate in other respects, a court may issue partial injunctive relief. *See New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16, 70 (D.D.C. 2019).[5] Accordingly, Plaintiff is

---

[5] Courts have granted a variety of injunctive remedies under FOIA in similar contexts, including in actions against CBP. *See, e.g.*, *Sabra v. U.S. Customs & Border Prot.*, 590 F.Supp.3d 351 (D.D.C. 2022) (ordering additional searches of CBP custodians); *Council on Am.-Islamic Rels.-Washington v. U.S . Customs & Border Prot.*, 492 F. Supp. 3d 1158 (W.D. Wash. Oct. 5, 2020) (ordering search of additional CBP custodians); *New Orleans Workers' Ctr. for Racial Justice v. U.S. Immigr. & Customs Enf't*, 373 F. Supp. 3d 16 (D.D.C. 2019) (ordering search of additional U.S. Immigration & Customs Enforcement offices, systems, and files); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012) (ordering search of additional U.S. Immigration and Customs Enforcement custodians using search terms and methodologies to be agreed to with requester); *Shapiro v. Dep't of Justice*, 214 F.Supp.3d 73 (D.D.C. 2016) (ordering search of former Office of Solicitor General attorneys' emails using prescribed search terms); *Am. Oversight v. U.S. Gen. Servs. Admin.*, 486 F.Supp.3d 306, 316 (D.D.C. 2020) (ordering search of General Services Administration voicemails, call logs, and

entitled to a partial grant of summary judgment and partial injunctive relief.

### a. CBP's Decision Not to Search MCAT Custodians

Plaintiff argues that Defendant's search was inadequate because it did not search any MCAT custodians for responsive records. ECF No. 37 at 11. Specifically, Plaintiff argues that Defendant had reason to believe that MCAT custodians were likely to possess responsive records. In his sworn Declaration (ECF No. 35-1), Mr. Howard describes a search of the OFO Laredo Ops Shared that "identified MCAT daily reports and emails." ECF No. 35-1 ¶ 13. Consequently, Plaintiff argues, CBP's limitation of its search to the Del Rio Sector Shared Drives, OFO Laredo Ops Shared Drive, and cbp.dhs.gov e-mail accounts, constitutes an admission that CBP failed to follow up on an "obvious lead" to a source of responsive records. ECF No. 37 at 11.

Defendant responds that it properly confined its search on the Del Rio Sector and OFO Laredo Ops because those areas were focused on migration and asylum issues at the Eagle Pass POE, the subject of Plaintiff's FOIA request. ECF No. 38 at 7. MCAT was part of national CBP headquarters, and was tasked with overseeing a larger geographic area than that encompassed by Plaintiff's request. *Id.*

---

text messages); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F.Supp.2d 28 (D.D.C. 1998) (ordering "rigorously monitored new search" for responsive Department of Commerce records).

Here, Plaintiff has not shown that Defendant's failure to specifically search MCAT custodians makes its search inadequate as a matter of law. The focus of the adequacy inquiry "is not 'whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 488 F.3d 178, 182 (3d Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). Failure to search a specific location constitutes an inadequacy only when there are "positive indications of overlooked materials." *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (internal quotations omitted).

Plaintiff's contention is essentially that, because MCAT oversaw migration-related issues on the Southwest border, and MCAT reports were identified in the OFO search, MCAT custodians must necessarily possess responsive records that Defendant's search did not uncover. But this falls short of the standard requiring positive indications that materials were overlooked. Given that Plaintiff's request focused on Eagle Pass POE, Defendant's limitation of its search to the Del Rio Sector and OFO Laredo Ops was reasonable. Moreover, Plaintiff fails to show why any responsive MCAT records would not also have been turned up by the OFO or enterprise-wide email account searches. CBP's decision about which locations to search was reasonable. Plaintiff has failed to show she is entitled to injunctive

25

relief in this regard.[6]

### b. CBP's Inspection of Paul Del Rincon's and Pete Macias's Mobile Devices

Next, Plaintiff argues that CBP's decision not to search for responsive cell phone records, text messages, and call logs renders its search unreasonable and inadequate. Plaintiff's original FOIA request asked for communications with Hector Menchaca and the phone number +52-878-703-2497. In the course of her communications with CBP, Plaintiff further clarified that the mobile devices of Port Director Paul Del Rincon and Assistant Port Director Pete Macias were likely sources for responsive communications. ECF No. 37-4. After CBP acquired Mr. Del Rincon's and Mr. Macias's active mobile devices, however, it limited its search to in-person visual inspections of these devices focused on the WhatsApp application.

Defendant responds that both the scope and methodology of CBP's search of Mr. Del Rincon's and Mr. Macias's mobile devices were adequate. Because CBP does not have the ability to perform a remote search, in-person inspections were necessary. Defendant further argues that these inspections only focused WhatsApp because that is what Plaintiff requested. ECF No. 38 at 10. "Having directed the

---

[6] For the same reasons, Plaintiff's argument that CBP's failure to search a number of other offices (ECF No. 37 at 16-18) is unavailing. Specifically, Plaintiff lists the offices of: CBP's Commission; the Chief Border Patrol Agent; the Head of the Office of Field Operations; the Office of Intelligence; the Office of Congressional Affairs; and the Office of Public Affairs.

Agency to search for WhatsApp messages between these two agency employees and Hector Menchaca, Hoffman cannot now complain about the limits of that revised search. . . . She agreed to this search and cannot now complain because it failed to return the results she hoped it might." *Id.*

Defendant mischaracterizes Plaintiff's position. It is true that, in her communication to CBP in which she suggests the search of Mr. Del Rincon's and Macias's mobile devices, Plaintiff refers numerous times to evidence that CBP officers stationed at Eagle Pass often used WhatsApp to communicate with Hector Menchaca in Piedras Negras. ECF No. 37-4. Again, however, it is crucial to return to the text of Plaintiff's original FOIA request. Plaintiff's request seeks "*any and all* correspondence" and "*any and all* communications." ECF No. 1 ¶ 12 (emphasis added). The FOIA request at issue in this litigation was not limited to WhatsApp.

Plaintiff proffered information to CBP that CBP officials often communicated with Mr. Menchaca via WhatsApp. It would be unfair to treat that proffer of information as a retroactive narrowing of the scope of her initial request. Moreover, I reemphasize that CBP has at all times during this litigation been required to construe Plaintiff's FOIA request liberally. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). *See also Gov't Accountability Project v. Dep't of Homeland Security*, 335 F.Supp.3d 7, 12 (D.D.C. 2018) ("FOIA requests are not a game of Battleship. The requester should not have to score a

27

direct hit on the records sought based on the precise phrasing of his request."). In limiting its search of Mr. Del Rincon's and Mr. Macias's mobile devices to a visual inspection focused solely on the WhatsApp application, CBP did not meet that obligation.

The question then becomes, what mobile device records must Defendant look for to perform an adequate search? Under FOIA, "virtually every document generated by an agency is available to the public in one form or another, unless it falls within one of the Act's nine exemptions." *NLRB. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975). This follows from the proposition that, as set out by the Third Circuit, "the basic public interest purpose of FOIA is 'to open agency action to light of public scrutiny.'" *Int'l Broth. Of Elec. Workers Local Union No. 5 v. U.S. Dep't of Hous. And Urban Dev.*, 852 F.2d 87, 90 (3d Cir. 1988) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976)). As of this writing, three circuit courts of appeal, including the D.C. Circuit, have held that all non-exempt data points in an agency's custody are disclosable under FOIA. *ACLU Immigrants' Rts. Project v. U.S. Immigr. & Customs Enf't*, 58 F.4th 643, 654 (2d Cir. 2023); *Inst. for Justice v. Internal Revenue Serv.*, 941 F.3d 567, 570 (D.C. Cir. 2019); *Ctr. for Investigative Reporting v. U.S. Dep't of Justice*, 14 F.4th 916, 937-38 (9th Cir. 2021).

Plaintiff argues that CBP should have searched for text messages and call

logs in addition to WhatsApp messages. I find this assertion perfectly reasonable. There is no statutory basis for treating text messages and call logs as categorically different from emails or any other type of government data commonly disclosed in response to FOIA requests. *See, e.g., Am. Oversight v. U.S. Gen. Servs. Admin.*, 486 F.Supp.3d 306, 316 (D.D.C. 2020) (ordering agency to conduct a search of voicemails, call logs, and text messages). Accordingly, CBP must perform an expanded search of Mr. Del Rincon and Mr. Macias's mobile devices that encompasses not only WhatsApp communications, but text messages and call logs as well.

The last remaining question is what constitutes an adequate search methodology for these three categories of mobile device data. The application of FOIA's search provisions to mobile device data is relatively new ground for federal courts. *See ACLU of Massachusetts v. Immigr. & Customs Enf't*, No. 21-CV-10761-AK, 2023 WL 3306970, at *6-8 (D. Mass. May 8, 2023). The application of FOIA to searches for encrypted chat messages is, to this Court's knowledge, ground that is completely untrodden.

On one hand, encrypted chat applications like WhatsApp pose particularly thorny problems for enforcement of the FOIA because the nature of such applications is that they keep communications secret, and do not automatically retain records of past communications. *See generally* Veronika Balbuzanova,

*Don't Kill the Messenger: How the New Technologies Used by Internet-Based Communications Providers are Gutting Compelled Disclosure Laws*, 8 J. L. & Cyber Warfare 121, 143-44 (2020) (discussing the "ephemeral nature" of encrypted messages sent via WhatsApp). This makes searching for WhatsApp records more complicated than searching email inboxes or shared hard drives that retain records in their usual course of operation.

On the other hand, the fundamental tenets of FOIA remain unchanged even in this new context. It remains true, for instance, that "the adequacy of a FOIA search is generally determined . . .  by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003). It also remains true that an agency's "failure to find a record that once existed, coupled with a conclusory affidavit about the methodology of the search, can weaken the agency's claim for summary judgment." *Aguiar v. Drug Enf't Agency*, 865 F.3d 730, 739 (D.C. Cir. 2017). Therefore, the question becomes whether Defendant has shown in sufficient detail that its methodology for searching Mr. Del Rincon's and Mr. Macias's mobile devices was appropriate.

 The answer is no. Defendant's multiple declarations describing the search of Mr. Del Rincon's and Mr. Macias's mobile devices for responsive data are woefully inadequate by any conceivable existing standard.

First, Defendant offers no support for its assertion that all potential

responsive cell phone records would be accessible on Mr. Del Rincon's and Mr.

Macias's active devices, which were not in service from January 1 to February 21,

2019. Mr. Howard's Declaration merely says:

> I have been informed that the two CBP employees whose Agency
> mobile phones were manually searched had their old Agency mobile
> number transferred to their new phones. Thus, there would be no
> difference if a search of the WhatsApp account tied to a specific phone
> number occurred on a replacement phone with the same number as the
> messages would still be searchable.

ECF No. 35-1 ¶ 11.

Informed by whom? On what basis does he assert that the messages from the

inactive devices were transferred to the active devices? He does not say.[7]

Even assuming that Mr. Howard's factual assertions are true, and that all

responsive records were transferred to Mr. Del Rincon's and Mr. Macias's active

mobile devices, further issues arise with how the active mobile devices were

actually searched. David Garcia, a supervisory officer in the Laredo Field Office,

conducted the search of Mr. Del Rincon's mobile device. ECF No. 35-3 ¶ 1. Mr.

Garcia's Unsworn Declaration states that his "search" consisted only of "a visual

---

[7] This is a glaring omission considering that WhatsApp itself explicitly states on its publicly-accessible "Information for Law Enforcement" page that, "WhatsApp does not store messages once they are delivered or transaction logs of such delivered messages," and that undelivered messages are deleted from its servers after thirty days. Balbuzanova, *supra* p. 29-30, at 143-44 (citing *Information for Law Enforcement Authorities*, WhatsApp, available at https://www.whatsapp.com/legal/Information-for-Law-Enforcement-Authorities-(EN).pdf [https://web.archive.org/web/2018105232747/https://www.whatsapp.com/legal/Information-for-Law-Enforcement-Authorities-(EN).pdf]).

inspection" of Mr. Del Rincon's mobile device "focused on the WhatsApp application." "The visual inspection of the mobile device found no responsive records." *Id.* ¶ 2. Mr. Garcia does not give any additional detail as to what this visual inspection entailed. There is no way to know what search terms he employed, where and how he searched for responsive records, or if he made any attempt to retrieve backups of old messages.

Bob Parker's Unsworn Declaration is nearly identical in substance to Garcia's, and therefore similarly inadequate. Mr. Parker, the Port Director assigned to the Brownsville, Texas POE, conducted the inspection of Macias's phone. ECF No. 35-4 ¶ 1. His "visual inspection," which "focused on the WhatsApp application" similarly "found no responsive records." *Id.* ¶ 2. No further explanation is offered. Perhaps both inspections were doomed from the start, however, since neither Mr. Parker nor Mr. Garcia claim to have any training whatsoever in forensics or digital data recovery.

The Unsworn Declaration of Michael McGehee, the Supervisory CBP Officer at the Eagle Pass POE (ECF No. 35-5), tells of the fate of Mr. Del Rincon's and Mr. Macias's inactive mobile devices. Mr. Del Rincon and Mr. Macias were issued new mobile devices on February 7, 2020, and January 6, 2020, respectively. ECF No. 35-2 ¶ 4. When the new devices were issued, their old mobile devices – the ones in use during the period encompassed by Plaintiff's FOIA request – were

deactivated. *Id.* ¶ 7. On November 15, 2021, Mr. Del Rincon turned in his

deactivated mobile device to his CBP local property officer. ECF No. 35-5 ¶ 2. On

November 16, 2021, Mr. McGehee powered on Mr. Del Rincon's phone and found

that the phone had been reset to factory settings, "which to [his] knowledge cleared

the settings and data previously stored on the iPhone Series 8. It is unclear when

the device was reset to factory settings." *Id.* ¶ 3. He did not conduct any further

inspection or investigation. *Id.*

Mr. McGehee further details that Mr. Macias told him he turned in his

inactive mobile device on November 18, 2021. "However, mission support staff

cannot find any documentation reflecting that APD Macias turned in the phone,

and they have been unable to physically locate the mobile device." *Id.* ¶ 4.

Accordingly, Mr. McGehee could not verify whether any data, responsive or

otherwise, was on the mobile device.

In summary, Plaintiff identified two people who were likely to have

responsive records on their mobile devices. Of the two mobile devices active from

January 1 to February 21, 2019, one had its memory wiped, and the other was

"turned in" but has since been mysteriously lost to the sands of time. Defendant

tells the Court, however, that all data on the old devices would have transferred

over to the new devices. These new devices were then subjected to a vague "visual

inspection" about which nothing is known except that these inspections "focused

on the WhatsApp application," and that they were conducted by agents with no training in forensics or digital data recovery. This is plainly insufficient.

Accordingly, CBP must perform an expanded search of Mr. Del Rincon's and Mr. Macias's mobile devices for all responsive communications that conforms to established FOIA requirements. This must necessarily include a search for any records that may have been in the custody of CBP at the time Plaintiff made her FOIA request, but have since been lost or misplaced. Although Defendant is not obligated "to make hopeless and wasteful efforts to locate [records] that would never have been created in the normal course," CBP must provide a thorough accounting of the appropriate methods used to search for and recover any responsive records that should never have been deleted in the first place. *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

### c. Additional Arguments

Plaintiff's two remaining arguments are moot in light of case developments subsequent to her filing her motion for summary judgment.

First, Plaintiff argues that CBP's search was inadequate because Mr. Howard only averred that CBP had searched the locations "most likely" to contain responsive documents. Mr. Howard has since filed an additional affidavit averring that "all files" likely to contain responsive documents were searched. ECF No. 37

at 10; ECF No. 38-1 ¶ 3.[8]

Plaintiff also argues that CBP withheld responsive records – specifically, several "Central American Caravans and Migrant Crisis Flow" updates – from its production. Mr. Howard's second Declaration expresses that CBP would produce the missing updates. ECF No. 37 at 18; ECF No. 38-1 ¶ 6.

Based on Defendant's sworn statements to the Court, these two alleged deficiencies in its search and production have been cured. Plaintiff's arguments as to these deficiencies are therefore moot.

For the reasons set out above, Plaintiff is entitled to partial summary judgment. Specifically, I will grant summary judgment for Plaintiff as to the search terms CBP used in its search of email accounts in the cbp.dhs.gov domain; and the adequacy of CBP's search for responsive records from Mr. Del Rincon's and Mr. Macias's mobile devices. Plaintiff's arguments as to CBP's omission of an "all files" averment, and CBP's failure to produce several responsive records, are moot. I will deny summary judgment for Plaintiff as to the adequacy of Defendant's search in all other respects.

---

[8] Moreover, "all files likely to contain responsive materials" are not "magic words" necessary to find that a search was adequate. The inquiry remains at all times on the appropriateness of the methods employed, rather than the exact terminology used to describe them. *See Speaking Truth to Power v. U.S. Nat'l Nuclear Sec. Admin.*, No. 14-CV-1421, 2015 WL 3948102, at *2 (E.D. Pa. June 29, 2015) (Bartle, J.).

### B. Plaintiff's Statement of Interest and Defendant's Response

Having determined that Plaintiff is entitled to partial summary judgment, the remaining task before the Court is to craft appropriate injunctive relief that will cure the deficiencies in Defendant's search and bring this case a significant step closer to a satisfactory conclusion.

On April 20, 2023, I ordered Plaintiff to file a statement of her position as to the following issues: 1) proposed specific search terms and methodology to be used by CBP in a revised search for responsive records; 2) the use of encrypted chat applications on CBP mobile devices during the period of January 1, 2019 to February 21, 2019; and 3) the alleged failure by CBP to preserve responsive records after February 21, 2019, the date Plaintiff submitted her FOIA request. ECF No. 47. I will address each part of Plaintiff's statement (ECF No. 48) and Defendant's response (ECF No. 49) in turn.

### 1. Revised Search Terms and Methodology

Plaintiff proposes a wider set of search terms to be used in an expanded email account search, and suggests the use of a "refinement" technique to filter out non-responsive records. ECF No. 48 at 1-4. Defendant responds "in the spirit of compromise" with an offer to run a new search across all CBP email accounts with all but one of Plaintiff's proposed terms, but linked with Boolean operators, e.g., ("Eagle Pass" or "Piedras Negras" or Coahuila) AND (Migrant or Migration or

36

Caravan), to reduce the number of non-responsive records returned. ECF No. 49 at 2-3.[10]

Defendant's compromise offer is a fair one. I will order Defendant to conduct a revised search using the search terms and methodology proposed in its response, with one additional provision. Should this revised search return an overwhelming number of records, Defendant must meet and confer with Plaintiff about the use of a "refinement" search to filter the results of the larger search before it can claim that the search constitutes an undue burden. After the revised search is concluded and all responsive records have been produced, Defendant must submit a declaration from a declarant with personal knowledge of the revised email search describing the search in sufficient detail.

### 2.  Encrypted Chat Applications and Revised Search of Mobile Devices

Next, Plaintiff proposes that Defendant identify all CBP agents working at the Eagle Pass POE between January 1, 2019 and February 21, 2019, and inspect their mobile devices for responsive communications. ECF No. 48 at 4-5. In addition, Plaintiff proposes that CBP conduct a new inspection of Mr. Del Rincon's and Mr. Macias's mobile devices for all responsive messages. *Id.* Plaintiff also suggests the Court order CBP to provide all information relating to an October 26, 2021 letter

---

[10] Defendant omits the search term "Hector Menchaca" because that term was employed in the original search.

from the National Archive and Records Administration ("NARA") expressing concern over CBP agents' use of encrypted chat applications. *Id.* Defendant responds that a search of all agents' mobile devices would be unreasonable and overly burdensome, and argues that Plaintiff cannot expand her search request after identifying Mr. Del Rincon and Mr. Macias as likely sources of responsive records. ECF No. 49 at 3-4.

Defendant is correct insofar as the identification and recovery of all CBP agents' mobile devices active at the Eagle Pass POE from January 1, 2019 to February 21, 2019 would be unreasonable and overly burdensome. To conduct a thorough search of each of these mobile devices would constitute an enormous undertaking. Nor does it fall within this Court's FOIA jurisdiction to compel the production of internal documents relating to any ongoing investigation by NARA regarding enforcement of federal records retention statutes.

However, for the reasons detailed above, an expanded search of the two mobile devices Plaintiff identified is necessary for Defendant to meet its FOIA obligations. I will order CBP to submit sworn declarations from declarants who are qualified information technology or forensic data recovery specialists with personal knowledge of the search. These declarations must set out in detail the revised search for responsive records from Mr. Del Rincon's and Mr. Macias's active and inactive mobile devices. The records sought must include, but are not

necessarily limited to: 1) WhatsApp messages and any other responsive WhatsApp data; 2) text messages; and 3) call logs.

### 3.  Unauthorized Destruction of Responsive Records

Finally, Plaintiff urges the Court to take three steps to remedy any potential unauthorized destruction of responsive records that took place after Plaintiff filed her FOIA request: 1) order CBP to produce call logs from its vendors and carriers for devices in use at Eagle Pass POE during the period encompassed by her request; 2) order CBP to report the destruction of phone data, and the loss of Macias's mobile device, to NARA for further investigation; and 3) consider enjoining CBP from allowing further destruction of responsive data in the future. ECF No. 48 at 6-8. Defendant responds that each of these potential remedies falls outside the scope of this Court's FOIA jurisdiction. ECF No. 49 at 5-7.

I agree with Defendant that it would be improper to order a subpoena of call logs from third-party vendors. FOIA obligates agencies to disclose documents in its custody, not to acquire or create documents it does not have. *See Yeager v. Drug Enf't Admin.*, 678 F.2d 315, 322 (D.C. Cir. 1982) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 161-62 (1975)). I also agree that an injunction against CBP preventing further destruction of responsive data in the future is unnecessary, regardless of whether such an injunction would fall outside the scope of this Court's FOIA jurisdiction.

I cannot agree, however, with Defendant's blanket assertion that FOIA does not grant federal courts *any* jurisdiction to remedy specific categories of records destruction. It is true that FOIA does not itself impose an obligation on government agencies to preserve records before a request for those records is made. However, a failure to preserve responsive records *after* a request has been made can, in some instances, constitute an improper withholding under FOIA. *See Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 155 (1980); *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F.Supp.2d 28, 42-44 (D.D.C. 1998); *Raher v. Fed. Bureau of Prisons*, No. 09-cv-526, 2012 WL 2721613, at *2-3 (D. Or. July 9, 2012).

The record shows that Mr. Del Rincon and Mr. Macias were issued new mobile devices on February 7, 2020, and January 6, 2020. ECF No. 35-2 ¶ 4. The timing of when these devices were issued raises the possibility that Mr. Del Rincon's mobile device had its memory wiped, and Mr. Macias's mobile device went missing, long after Plaintiff had submitted her original FOIA request for communications and correspondence in late February 2019. At this time the Court does not have sufficient information to determine whether those devices contained responsive records, or whether any responsive records they did contain have since been lost or are available elsewhere. *But see* DHS, OIG, OIG-21-62, *CBP Targeted Americans Associated with the 2018-2019 Migrant Caravan*, at 27-29 (2021)

(finding that the failure of CBP officials to retain WhatsApp messages with Mexican officials in January 2019 "likely violated DHS and CBP records retention policies"); Nat'l Archives and Records Admin., UD-2022-0001 (Oct. 26, 2021) (expressing concern that the use of encrypted chat applications by CBP officials "expose[s] the Department to the risk of potential unauthorized destruction of records").

If the inactive mobile devices at one time contained responsive records, those records would have been in CBP's custody at the time Plaintiff made her FOIA request. Only Defendant can answer the question of how Mr. Del Rincon and Mr. Macias's mobile devices, and any responsive records they may have held, were handled after February 21, 2019. Defendant must make a reasonable effort to provide that information to the Court so that the Court can ultimately dispose of this litigation with the complete factual record before it.

Accordingly, Defendant must also submit sworn declarations setting out in detail the sequence of events leading to: 1) the wiping of the data on Mr. Del Rincon's inactive mobile device; 2) the loss of Mr. Macias's inactive mobile device; and 3) the efforts CBP has taken to either recover any data that was lost from either device, or to verify that all data was transferred from the inactive mobile devices to the active mobile devices. These sworn declarations must also be from declarants with personal knowledge of these efforts who are qualified

information technology or forensic data recovery specialists.

### C. The FOIA Exemptions Applied by Defendant

As part of their respective motions, both Defendant and Plaintiff have moved for summary judgment as to whether CBP's withholdings and redactions of responsive records were proper under FOIA.

Because Defendant must conduct a revised search, at this time it is premature to determine whether Defendant has properly withheld and redacted records and portions of records. In addition, should Defendant's revised search return more responsive records, it is possible that Defendant would also file a supplemental *Vaughn* index detailing its justifications for withholding and redacting responsive records pursuant to enumerated FOIA exemptions. *See Vaughn v. Rosen*, 523 F.2d 1136 (D.C. Cir. 1975). Accordingly, I will deny both motions for summary judgment as to the FOIA exemptions applied by Defendant. If necessary, both parties may raise their arguments again after the revised search is completed.

## IV. CONCLUSION

For these reasons, I will rule on both motions as follows:

- I will deny Defendant's motion for summary judgment in its entirety.

- I will grant Plaintiff's motion for summary judgment in part, namely as to the search terms CBP used in its search of email accounts in the

42

cbp.dhs.gov domain; and the adequacy of CBP's search for responsive records from Mr. Del Rincon's and Mr. Macias's mobile devices.

- I will resolve as moot Plaintiff's motion for summary judgment as to Defendant's "all files" averment; and Defendant's failure to produce Central American Caravans and Migrant Crisis Flow – Updates 28, 29, and 25-27.

- I will deny Plaintiff's motion for summary judgment in all other respects.

To remedy the inadequacies in Defendant's search, consistent with the Court's jurisdiction conferred by the FOIA statute, I will order the following injunctive relief:

- Defendant must conduct a revised search of all email accounts in the cbp.dhs.gov domain using the search terms proposed in its Response to Plaintiff's Statement of Interest. ECF No. 49. If the revised search returns an overwhelming number of potentially responsive records, Defendant must meet and confer with Plaintiff about the use of a "refinement" search as described in Plaintiff's Statement of Interest (ECF No. 48) to filter the larger search before it can claim that the search constitutes an undue burden.

- After the revised email search is concluded and all responsive records

43

have been produced, Defendant must submit a sworn declaration (or declarations) from a declarant (or declarants) with personal knowledge describing in sufficient detail the revised email search.

- Defendant must conduct a revised search for responsive records from Eagle Pass Port Director Paul Del Rincon's and Assistant Port Director Pete Macias's active and inactive mobile devices. The records sought must include, but are not necessarily limited to: 1) WhatsApp messages and any other responsive WhatsApp data; 2) text messages; and 3) call logs.

- After this search is concluded, Defendant must submit a sworn declaration (or declarations) from a declarant (or declarants) who are qualified information technology or forensic data recovery specialists with personal knowledge of the search. These declarations must set out in detail the revised search for responsive records from Mr. Del Rincon's and Mr. Macias's active and inactive mobile devices.

- Defendant must also submit a sworn declaration (or declarations) from a declarant (or declarants) who are qualified information technology or forensic data recovery specialists with personal knowledge of the search setting out in detail the sequence of events leading to: 1) the wiping of the data on Mr. Del Rincon's inactive

44

mobile device; 2) the loss of Mr. Macias's inactive mobile device; and

3) the efforts CBP has taken to recover any data that was lost from

either device, or to verify that all data was transferred from the

inactive mobile devices to the active mobile devices.

On or before **Friday, September 29, 2023**, both parties must file a joint

status report with the Court regarding the progress to date of the revised search.

COPIES VIA ECF

s/ANITA B. BRODY, J.
ANITA B. BRODY, J.

## **Appendix A**

## **Glossary**

- CBP: U.S. Customs and Border Protection

- DHS: Department of Homeland Security

- MCAT: Migrant Crisis Action Team

- NARA: National Archives and Records Administration

- OFO: Office of Field Operations

- OIG: Office of Inspector General

- POE: Port of Entry