UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN HOFFMANN, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No. 2:20-cv-06427-AB |
| | ) |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S STATEMENT REGARDING UNRESOLVED ISSUES**

Freedom of Information Act (FOIA or the "Act') requester and Plaintiff Karen Hoffmann, through undersigned counsel, respectfully submits this Statement/Brief outlining the central unresolved issues, pursuant to the Court's May 3, 2024 order.

**I.   Introduction**

The focus of Ms. Hoffmann's case has always been the record of communications between Eagle Pass Port of Entry personnel regarding efforts to coordinate the movement of migrants on the Mexican side of the border between January 1, 2019 and February 21, 2019. ECF No. 1, ¶12.

Specifically, on February 21, 2019, Ms. Hoffmann sought:

a. Any and all correspondence and/or record of communications between CBP agents or employees and Hector Menchaca.
b. Any and all correspondence and/or record of communications between CBP agents or employees and the telephone number +52-878-703-2497.
c. Any and all communications relating to the capacity of CBP to accept asylum seekers for processing at the Eagle Pass POE from January 1, 2019 to the present.

    d. Any and all internal or external CBP communications regarding a list of migrants awaiting their turn to present themselves at the Eagle Pass POE from January 1, 2019.

    e. Any and all internal or external CBP communications regarding migrants detained in Piedras Negras, Mexico, from January 1, 2019 to the present.

Ms. Hoffman also expressed to CBP that agents' mobile devices were likely sources of responsive records in the timeframe of her request. ECF No. 37-4. Specifically, in response to a CBP inquiry, she identified the mobile devices of Eagle Pass Port Director Paul Del Rincon and Assistant Port Director Pete Macias as likely sources of responsive records, as Mr. Del Rincon and Mr. Macias would have been likely to communicate with Mr. Menchaca "often using WhatsApp." *Id.*

Ms. Hoffmann's April 9, 2021 email to defense counsel advising of the coordination between the Port Directors and Mr. Menchaca unequivocally identified the Directors' mobile devices as sources of responsive records:

> Hi Eric,
>
> Thanks for your patience. One CBP official who communicated with Menchaca by WhatsApp is Eagle Pass Assistant Port Director Peter Macias. It is possible that the Port Director, Paul Del Rincón, was also in communication with Menchaca.
>
> This report from Human Rights First describes the process by which CBP agents communicated with Menchaca (pp. 3-4):
>
>> At the Eagle Pass Port of Entry, CBP officers directed a private citizen acting on behalf of the Piedras Negras municipal government to remove asylum seekers from international bridges and relied on a "list" managed by that individual to process asylum seekers. …
>>
>> ■ Asylum seekers were placed on a "list" that contains their names, dates of birth, sex, nationality, phone number, photograph and a local address. As of late February 2019, approximately 180 asylum seekers were on the "list." The "list" manager asked asylum seekers to send this information via WhatsApp message and instructs asylum seekers without telephones or the application to use another individual's mobile phone because he prefers to receive all asylum seeker information in this manner. Officials from the municipal government also had access to the "list."
>>
>> ■ CBP officers on these bridges contacted the private businessperson who serves as the link between the municipal government of Piedras Negras and U.S. immigration officers by telephone, often using WhatsApp – an end-to-end encrypted messaging service, when people try to seek asylum at the bridge and request that the list manager remove them from the area. …
>>
>> ■ On days that CBP processed asylum seekers, a CBP officer informed the "list" manager via WhatsApp voice message of the number and demographics (families, single males, single females, etc.) of the asylum seekers the port will accept. The manager sent a list of the asylum seekers with their photographs to CBP and his staff picked up the asylum seekers from local shelters and dropped them off on the Mexican side of International Bridge II to cross on foot.
>>
>> ■ During a meeting between Human Rights First researchers with the "list" manager, he received a voice message on WhatsApp from an individual he identified as a CBP officer instructing him to send six asylum seekers to the port. The day prior CBP had accepted 12 individuals from the list. According to the "list" manager and shelter directors in Piedras Negras, the port generally accepted a maximum of 12 to 15 asylum seekers per day, and on some days takes no asylum seekers.
>
> You asked about dates and times -- the metering list is something they would have communicated almost daily from at least January 2019 to March 2020.
>
> I hope this helps, please let me know if there's anything more you need.

## II. The "Missing" Mobile Phone Devices

In March and April 2024, after continuing its pattern of alleging complete production, only to "discover" additional responsive documents after plaintiff has identified obvious gaps in information or point on inconsistencies, CBP produced four new and unsworn declarations addressing the mobile devices of Port Director Paul Del Rincon and Assistant Port Director Peter Macias:

a. March 18, 2024 Unsworn Declaration of Diane C. Bustos (ECF 63-1);

b. March 18, 2024 Unsworn Declaration of Alejo M. Guedea (ECF 63-2);

c. March 18, 2024 Unsworn Declaration of Anniebeth Labiosa (ECF 63-3);

d. April 18, 2024 Supplemental Unsworn Declaration of Diane C. Bustos (ECF 63-4).

Ms. Bustos' declaration alleges her oversight of forensic searches started in July of 2023. ECF No. 63-1. She fails to identify, with any specificity, the mobile devices used by the port directors during the relevant time frame. She does, however, allude to a device issued to Assistant Port Director Macias that is unaccounted for, *Id.*, ¶¶10-11, and admits that "there are several inactive devices that were assigned to Port Director Del Rincon and Assistant Port Director Macias that have been wiped and destroyed." *Id.,* ¶12. Inexplicably, Ms. Bustos was "unable to identify anyone with personal knowledge" regarding ordering the destruction or wiping of the port directors' devices. *Id.*

Mr. Guedea's declaration describes the multi-part documentation that is kept to track mobile devices issued to individuals like the port directors. ECF No. 63-2.

3

Accordingly to Mr. Guedea's investigation, AT&T shows that Assistant Port Director Macias' cell phone number was assigned to a Samsung Galaxy S7 during the relevant time period. *Id.*, ¶ 7. However, despite an "exhaustive search", no CBP tracking document can be found regarding the device. Putting aside AT&T's records, it is as if the device never existed. *Id.*, ¶¶ 7-11.

Ms. Labiosa's declaration describes searches of devices and sim cards that have nothing to do with the relevant time period. ECF 63-3. None of the devices identified in this declaration were issued to the port directors in 2019. This is confirmed in Ms. Bustos' supplemental declaration which admits that each device listed in the Labiosa declaration was issued two to five years after Ms. Hoffmann's FOIA request. ECF No. 63-4.

The critical admissions come in Ms. Bustos' supplemental declaration, and are contained within paragraphs 6, 7, and 8.

ECF No. 63-4, ¶6:

> 6. Based on information collected from CBP personnel, during the relevant time period (January 1, 2019 to February 21, 2019), PD Del Rincon was assigned a Galaxy S-7 which was assigned on 8/6/2018, returned on 11/16/21, and destroyed on 2/18/22.

<u>CBP admits that it destroyed the mobile phone device assigned to Port Director Del Rincon three years after Ms. Hoffmann's FOIA request and ten months after her April 9, 2021 email directly raising the port directors' devices as sources of responsive records</u>. Ms. Bustos further confirms that Port Director Del Rincon continued to

4

possess this device through November 16, 2021 – a full seven months after Ms. Hoffmann asked CBP to specifically search for information on his mobile phone.

ENF No. 63-4, ¶¶7-8:

> 7. Based on information collected from CBP personnel, during the relevant time period (January 1, 2019 to February 21, 2019), APD Macias was assigned a Galaxy S-7 with an International Mobile Equipment Identity (IMEI) number of 35947007358706. As noted in my prior declaration, I have worked closely with Mission Support Specialist (MSS) Alejo Guedea, Eagle Pass POE, to locate records concerning the mobile device assigned to APD Macias during the relevant time period. The process to locate this inactive mobile device is set forth in Mr. Gudea's accompanying declaration. *See* Unsworn Declaration of Alejo M. Guedea at ¶¶ 7-9.
>
> 8. According to LPO Guedea, FirstNet, an AT&T partner, advised him that there was no activity for the Galaxy S-7 with an IMEI number of 35947007358706 other than in June 2020. LPO Guedea informed me that the fact that there was no usage other than in June, 2020 indicates that the mobile device had no activity, and therefore was not used by APD Macias. CBP has requested additional information from AT&T and its partner to see if it is possible to identify a mobile device used by APD Macias during the relevant period. We will advise you if we receive new information.

Regarding Assistant Port Director's "ghost" phone, we would be led to believe that the best CBP can determine is that he was assigned a device for government communication purposes, that there was no other device (because none is identified), and yet <u>he managed to have no mobile phone activity from June 2018 to June 2020</u>.

Was he using his personal device, a burner phone, or is Mr. Macias the only person in the United States to avoid using a mobile phone for greater than a year?

### III. CBP Has Avoided Producing the Most-Relevant Information

From plaintiff's perspective, there are two primary sources of evidence and responsive information that CBP seems determined to avoid:

1. The sworn testimony of Port Director Del Rincon and Assistant Port Director Peter Macias concerning their communications and communication devices;

2. Telephone service provider records, which could be subpoenaed.

It is plaintiff's position that the unresolved issues in this case could be addressed directly by allowing plaintiff's counsel to depose the port directors, and to subpoena mobile service providers. Plaintiff would be amenable to the subpoenas being returnable to the Court for *in camera* inspection.

WHEREFORE, plaintiff respectfully asks that the Court enter an order permitting this limited discovery.

Respectfully,

ADAM SNYDER
THE **ALLGOOD** FOUNDATION
 *For Plaintiff, admitted Pro Hac Vice*
The Goodman Theater Building
60 W. Randolph St., Suite 400
Chicago, Illinois 60601
(312) 945-1300
asnyder@sj-lawgroup.com