UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN L. HOFFMANN, | ) |
|     Plaintiff, | ) |
| v. | ) Civil Action No.: 2:20-cv-06427 |
| U.S. CUSTOMS AND BORDER PROTECTION, | ) |
|     Defendant. | ) |

**UNSWORN DECLARATION OF DIANE C. BUSTOS**

Pursuant to 28 U.S.C. § 1746, I, Diane C. Bustos, make the following declaration, which unless otherwise indicated, is based upon my own knowledge and observation.

1. I am a Senior Attorney for the Office of Chief Counsel (OCC) for U.S. Customs and Border Protection (CBP). I have worked for OCC CBP as an attorney since August 2017, and was promoted to Senior Attorney in July 2022. My duties include, but are not limited to, providing litigation support to and in close coordination with the Department of Justice.

2. The above-captioned case was assigned to me in November 2022 after the OCC CBP attorneys previously assigned to this case departed from OCC CBP. Before November 2022, I was not involved in CBP's search for responsive records stored on mobile devices nor did I have any involvement with this case.

3. In July 2023, upon receiving the Court's June 28, 2023 Order (Order) directing CBP to conduct a revised search for responsive records from the active and inactive mobile devices assigned to Eagle Pass Port Director (PD) Paul Del Rincon[1] and Assistant Port Director (APD) Pete Macias, Patrick A. Howard, Branch Chief, FOIA Division, contacted Eagle Pass Port of Entry

---

[1] Paul Del Rincon is now assigned to the Laredo Field Office as an Assistant Director of Field Operations (ADFO). I will refer to him as PD Del Rincon for the Court's convenience since that was his position at the time of the underlying Freedom of Information Act (FOIA) request.

(POE) personnel to advise them of the Court's Order and to introduce me as the attorney assigned to this case.

4. As part of my investigation, I first contacted the CBP employees who performed the first search of Del Rincon's and Macias' mobile devices. I also began searching for a "qualified information technology or forensic data specialist" (QITS or FDS) to conduct the revised search as set forth in the Court's order. I also began searching for information concerning PD Del Rincon's and APD Macias's active and inactive mobile devices.

5. I contacted Office of Information Technology (OIT) management to request assistance in locating a QITS and/or FDS at or near PD Del Rincon and APD Macias's respective ports to minimize the operational impact of high-level managers potentially being unreachable during the forensic examination. After learning that no one at their respective locations met the Order's criteria for the person who must conduct the revised search, I hosted a call with approximately 10 OIT managers and specialists who put me in touch with a CBP Digital Forensics Team manager.

6. I spoke with a member of the CBP Digital Forensics Team -- Jorge A. Rivera, Senior Digital Forensic Analyst (SFDA) -- and requested that the active and inactive mobile devices of PD Del Rincon and APD Macias be processed for: 1) WhatsApp messages and any other responsive WhatsApp data; 2) text messages; and 3) call logs from the period of January 1, 2019, to February 21, 2019.

7. After numerous communications, I worked with CBP personnel in several locations including Washington D.C., Virginia, Arizona, and several Texas locations and had the active and inactive mobile devices assigned to PD Del Rincon and APD Macias shipped to Anniebeth Labiosa, Digital Forensic Analyst (DFA), Southwest Regional Science Center, Greater Houston

Regional Computer Forensic Laboratory, for her forensic examination of the available active and inactive mobile devices.

8. I spent multiple hours on calls and remote meetings with SFDA Rivera discussing mobile device examinations, shipping the mobile devices to DFA Labiosa, and returning them to APD Macias and PD Del Rincon. I spent significant time with DFA Labiosa discussing her digital forensic examination of each mobile device shipped to her and execution of a declaration describing her examination and results thereof.

9. The results of DFA Labiosa's forensic examination of available active and inactive phones of PD Del Rincon and APD Macias is set forth in her accompanying declaration. Using search terms encompassing plaintiff's FOIA requests, DFA Labiosa searched:

   a. The active mobile devices (with sim cards) of PD Del Rincon (Source Media 4 & 5) and APD Macias (Source Media 2 & 3); and

   b. Inactive mobile devices belonging to PD Del Rincon (Source Media 1, 6 & 7).

10. There is an inactive mobile device belonging to APD Macias that I have worked closely with Mission Support Specialist (MSS) Alejo Guedea, Eagle Pass POE, to locate. I have spent many hours in unscheduled calls with Mr. Guedea discussing his search results and devising further plans to locate information about APD Macias's inactive phone. Mr. Guedea worked in a non-pay status on multiple occasions, working after hours to find documentation relating to the issuance of a mobile device to APD Macias. Mr. Guedea and I reviewed property records together to determine where this missing inactive phone belonging to APD Macias's phone may be.

11. Mr. Guedea and I contacted AT&T at different points to get as much information as possible concerning this missing inactive phone. Mr. Guedea and I have exchanged 80 emails and have spent over seven hours on calls together trying to determine whether this phone was ever issued to APD Macias (or properly documented). According to APD Macias's 259, this mobile

device was issued to him nearly six years ago and turned in over four years ago. As such, there are no "qualified information technology or forensic data specialist" with personal knowledge of the revised search that can set out in details the sequence of events leading to the "loss of Mr. Macias's inactive mobile device." The process to locate this inactive mobile device is set forth in Mr. Gudea's accompanying declaration.

12. Aside from the devices mentioned above, there are several inactive devices that were assigned to PD Del Rincon and APD Macias that have been wiped and destroyed. These destroyed devices cannot be searched and thus were not sent to DFA Labiosa for digital forensic analysis. Despite spending multiple days researching who ordered the destruction or wiping of these inactive devices, I am unable to identify anyone with personal knowledge of these acts. Generally, based on my discussions with numerous CBP personnel, CBP phones are destroyed in an effort to protect national security and/or law enforcement sensitive information that may have been on the mobile device.

13. All of PD Del Rincon and APD Macias' devices were provided to them as part of regular equipment upgrades.

14. In total, I spent over one hundred hours performing the tasks summarized above. Those efforts – coordinating the location, searching and review of active and inactive mobile devices of PD Del Rincon and APD Macias – were undertaken to comply with the Court's June 28, 2023 order.

I declare under penalty of perjury that the forgoing statement is true and correct.

___March 18, 2023_____     */s/ Diane C. Bustos*
Date                                     Diane C. Bustos