# EXHIBIT 13

# Del Rincon Decl. Dated Nov. 8, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

KAREN L. HOFFMAN,)
)
    Plaintiff,)
)
v.) Civil Action No.: 2:20-cv-06427
)
U.S. CUSTOMS AND BORDER PROTECTION,)
    Defendant.)
)

## UNSWORN DECLARATION OF PAUL DEL RINCON

Pursuant to 28 U.S.C. § 1746, I, Paul Del Rincon, make the following declaration, which unless otherwise indicated, is based upon my own knowledge and observation.

1.     I am an Assistant Director, Field Operations (Border Security) (ADFO) for U.S. Customs and Border Protection (CBP) assigned to the Laredo Field Office. I have worked for CBP since March 1, 2003.[1] From March 2003 through August 2018, I was progressively promoted through the following ranks within the Douglas Port of Entry (POE) and the Tucson Field Office: CBP Officer (CBPO); Supervisory CBPO; Chief Program Manager; and Border Security Coordinator. During my time as Border Security Coordinator, I served as Acting Port Director ((A)PD) for the Eagle Pass POE from February 2018 through May 2018. I was promoted to Port Director for the Eagle Pass POE in August 2018 and remained in that position until April 2022. Since April 2022, I have served as the Assistant Director, Field Operations (Border Security) (ADFO), for the Laredo Field Office. While serving as the Port Director for Eagle Pass, my duties included, but were not limited to, managing activities to accomplish the CBP mission through the core functions of Field Operations; and serving as a senior manager with responsibility for managing the full range of inspection, intelligence analysis,

---

[1] In 1995, I began working for the Immigration and Naturalization Service (INS) as an Immigration Inspector. On March 1, 2003, the majority of INS's functions were transferred to then-newly created entities, including CBP, within the then-newly created Department of Homeland Security.

examination, and law enforcement activities, to include providing oversight and coordination of the investigation of violations of laws enforced by CBP and the apprehension, detention and arrest relating to arrival and departure.

2. Based on information collected by Eagle Pass POE local property staff that I reviewed, it is my understanding that from the period of January 1, 2019, through February 21, 2019 (FOIA request timeframe), the mobile device assigned to me in my official capacity as PD of the Eagle Pass POE was a Samsung Galaxy S7. I have no independent recollection of the make and/or model of the mobile device assigned to me during that timeframe. Likewise, I have no independent recollection of the make and/or model of any mobile device assigned to me since 2019 other than the phone currently assigned to me. To the best of my recollection, at no point did I have more than one Agency mobile device assigned to me or in my possession. As a PD, I was assigned one mobile device by the Agency.

3. Based on information collected by Eagle Pass POE local property staff that I reviewed, I recently learned that the Galaxy S7 assigned to me during the FOIA request timeframe was destroyed on February 18, 2022 pursuant to standard practices regarding the disposal of inactive mobile devices. I have no independent knowledge concerning the disposition of this mobile device. Similarly, I have no knowledge concerning the disposition of any of my previously assigned mobile devices.

4. Generally, a Local Property Officer (LPO), CBP Technician, Wireless Account Custodian (WAC), or Mission Support Specialist (MSS) contacts me to inform me that I am due for an upgraded phone and that a new mobile device has been assigned to me. Other than reporting a problem or defect with my assigned mobile device, I am not involved in the determination of when I receive an upgraded mobile device. Once the LPO, WAC, CBP Technician, or MSS receives the new mobile device, they arrange to meet with me to retrieve my current mobile device and activate my new mobile device. I do not keep inactive mobile devices in my possession. It is my understanding that the local property staff is responsible for physical possession of inactive mobile devices from the time an

inactive mobile device is turned in to them until the mobile device is disposed of. However, since I have no role in this process, I am not aware of the intricacies of how this process is implemented. I turned over every inactive mobile device assigned to me to whomever received the replacement mobile device. I have no independent recollection of to whom I turned in each inactive mobile device.

5.  As PD of the Eagle Pass POE, I was not involved in creating, updating, or maintaining the paperwork the local property officer staff maintain to track assignment, location, receipt, disposition, and destruction of assets such as mobile devices. Similarly, in my role as PD, I was not involved in the determination as to what course of action is taken with inactive mobile devices (e.g., reassignment or destruction).

6.  On or about May 5, 2021, at the request of Director of Field Operations Randy Howe, SCBPO David Garcia conducted a visual inspection of my then-existing mobile device to search for records sought in the above-captioned case. I immediately complied with SCBPO Garcia's request to conduct a visual inspection of my mobile device.

7.  On or about February 13, 2024, I was asked to relinquish my active mobile device for the purpose of digital forensic analysis of the mobile device pursuant to a court order in the above-refenced case. I immediately turned over my phone to allow shipment of my active mobile device to the digital forensic analyst conducting the forensic examination.

I declare under penalty of perjury that the forgoing statement is true and correct.

___November 7, 2024___  
Date

Paul Del Rincon  
Assistant Director, Field Operations (Border Security)