# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KAREN L. HOFFMANN,       :
        Plaintiff,       :      CIVIL ACTION
                     :      No. 20-6427
        v.            :
                     :
U.S. CUSTOMS AND     :
BORDER PROTECTION,   :
        Defendant.     :

## MEMORANDUM

**September 10, 2025**                         **Anita B. Brody, J.**

On February 21, 2019, Plaintiff Karen L. Hoffmann submitted a request under the Freedom of Information Act, 5 U.S.C. §§ 552, *et seq.* ("FOIA") to the U.S. Customs and Border Protection (the "CBP" or "the Agency") seeking records of communications involving CBP personnel at the Eagle Pass Port of Entry along the southern border.   Her request encompassed the period beginning January 1, 2019 and concerned suspected efforts to coordinate the movement of migrants on the Mexican side of the border.   She brought this civil action to compel the Agency's response to her request.

The CBP subsequently searched its records and produced documents to Hoffmann.   It then sought summary judgment, as did Plaintiff in a cross-motion.   On June 28, 2023, I denied the CBP motion, granted Hoffmann's motion in part, and ordered the Agency to take particular steps to determine the existence of, and to produce as appropriate, additional documents responsive to the FOIA request. ECF Nos. 50, 51.   The CBP set out its efforts to do so in subsequent status reports accompanied by declarations from CBP personnel.

The CBP now renews its motion for summary judgment, which Hoffmann opposes.   ECF Nos. 70, 73, 76.   For the reasons set forth below, I will grant summary judgment to the Agency.

## I.    Undisputed Factual and Procedural Background[1]

Plaintiff directed a FOIA request to the CBP on February 21, 2019

---

[1]   The CBP did not file a separate Statement of Undisputed Material Facts in conjunction with the current motion.   Instead, it included an "Undisputed Factual Background" section in its brief in support of its motion.   ECF No. 70, Mem. of Law at 2-6.   Plaintiff did not dispute the presentation of the facts in the CBP's brief.   The facts relevant to the summary judgment question at this stage are sufficiently clear.   The absence of a separate statement of undisputed facts has not impaired the

seeking:

>[1] Any and all correspondence and/or record of communications between CBP agents or employees and Hector Menchaca;
>
>[2] Any and all correspondence and/or record of communications between CBP agents or employees and the telephone number +52-878-703-2497.
>
>[3] Any and all communications relating to the capacity of CBP to accept asylum seekers for processing at the Eagle Pass POE [Port of Entry] from January 1, 2019 to present.
>
>[4] Any and all internal or external CBP communications regarding a list of migrants awaiting their turn to present themselves at the Eagle Pass POE from January 1, 2019 to present.
>
>[5] Any and all internal or external CBP communications regarding migrants detained in Piedras Negras, Mexico, from January 1, 2019 to present.

Compl. at ¶ 12, ECF No. 1.   The CBP FOIA Division subsequently

searched for responsive information from the Del Rio, Texas sector of

the Agency, including a search of email accounts in the cbp.dhs.gov

domain.   At Plaintiff's request, the Agency also searched for records

---

Court's review of this motion.

from its Office of Field Operations, including a manual search of

records, and produced additional material in February and July 2022.

*See* Decl. of Patrick A. Howard, July 27, 2022, ¶¶ 13-14, MSJ Ex. 1,

ECF No. 70-1.

In subsequent communications about the Agency's production,

Plaintiff suggested that mobile devices of Eagle Pass Port Director Paul

Del Rincon and Assistant Port Director Pete Macias were possible

repositories of responsive records, specifically in the "WhatsApp"

mobile application.   *See, e.g.,* Undated E-mail from K. Hoffmann to E.

Gill, ECF No. 37-4.   The Agency consulted its cloud-based mobile

phone management system and confirmed in April 2021 that WhatsApp

was installed on the devices that Del Rincon and Macias were using at

that time, i.e., in April 2021.[2]   Decl. of John J. MacNeil, Oct. 7, 2021, at

---

[2]   The technology did not have the capability to determine if WhatsApp
had been installed on previous devices that were not then in use, nor
how the application was used, if at all.   The Agency's records indicated
that the devices with WhatsApp that Del Rincon and Macias were then
using had been assigned to them in 2020, which meant that they were
not the devices Del Rincon or Macias would have had access to during
the period of the FOIA request.

¶ 3, MSJ Ex. 2, ECF No. 70-2.   The following month, at the direction of the Agency, supervisors of Del Rincon and Macias inspected their mobile devices but found no responsive WhatsApp messages.   *See* Decl. of David Garcia, June 22, 2021, MSJ Ex. 3, ECF No. 70-3 (concerning Del Rincon phone); Decl. of Bob B. Parker, June 23, 2021, MSJ Ex. 4, ECF No. 70-4 (concerning Macias phone).

The parties filed cross-motions for summary judgment in 2022, which I resolved on June 28, 2023.   ECF Nos. 35, 37, 50-51.   I determined that the Agency's response as of that time was inadequate as to: (1) the search terms CBP used in its review of email accounts in the cbp.dhs.gov domain; and (2) its search of mobile devices used by Del Rincon and Macias.   ECF No. 50 at 42-43.   I ordered injunctive relief in two areas.   First, the CBP had to conduct a revised review of all email accounts in the cbp.dhs.gov domain using search terms that had been proposed in the summary judgment briefing.   I also required the parties to meet and confer if the revised search returned an overwhelming number of potentially responsive records.   Second, the CBP had to conduct a revised search for responsive records from active

and inactive mobile devices used by Del Rincon and Macias.   The

search was to encompass WhatsApp messages and data, text messages,

and call logs.   I required the Agency to submit a declaration from a

forensic data recovery specialist about the searches of the mobile

devices and efforts taken to recover any lost data or to verify that all data

from inactive devices was transferred to their active devices.   ECF No.

51.[3]

## A.  The e-mail searches

Following that ruling, the CBP conducted additional searches of

the cbp.dhs.gov email accounts, employing search terms that Plaintiff

had specified.   To gauge the volume of the response, it began by

running the search as to flag emails transmitted on two random dates

within the relevant period.   This initial search yielded 271,948 records.

The Agency paused the search, as it estimated that six to seven million

---

[3]   As set out in the Memorandum addressing the cross motions, I could
not determine from the record at that time whether the devices believed
to have been used by Del Rincon and Macias during the relevant time –
which reportedly had been wiped or gone missing – contained
responsive records, or whether any responsive records they once
contained might be available elsewhere.   ECF No. 50 at 40.

pages of records would have been generated from a search of the entire

period between January 1 and February 21, 2019.   The Agency relayed

to Hoffmann information about what it did and did not find in that initial

search.   It stated its objection that the review of such a large output

constituted an undue burden, given what appeared to be the unlikely

prospect of finding any records that were sought in the FOIA request

and that had not already been produced.   The Agency then applied

another search term suggested by Hoffmann to limit the results, but that

revised search yielded 124,793 pages.   The Agency again conveyed this

information to Hoffmann, following which the parties conferred about

the search results.   Decl. of Patrick A. Howard, Nov. 7, 2024, ¶ 10, MSJ

Ex. 10, ECF No. 70-10.   The CBP produced 650 additional pages of

separate documents on February 27, 2024.   *Id.*, ¶ 6.

## B.  The mobile phone searches

A Senior Attorney in the Office of Chief Counsel, Diane C.

Bustos, oversaw the Agency's response to my 2023 Order regarding the

collection of information about the mobile and inactive phones of Del

Rincon and Macias.   She arranged for a digital forensic analyst to

examine all active and inactive mobile devices known to have been assigned to Del Rincon and Macias since January 2019 that were still within the possession of the Agency.   The forensic expert searched the devices using keyword searches provided by counsel.   She uncovered no records responsive to the FOIA request.   Decl. of Anniebeth Labiosa, Mar. 18, 2024, ¶¶ 3-21, MSJ Ex. 8, ECF No. 70-8.

Attorney Bustos and the property manager responsible for the division that included the Eagle Pass Port of Entry attempted without success to locate additional devices that Del Rincon and Macias may have possessed in early 2019.   Most recently, they discovered that Del Rincon may have possessed a Samsung phone during the relevant time period.   The Agency could determine that a Samsung phone had been assigned to Del Rincon on August 6, 2018.   It was marked as "returned" on November 16, 2021 and marked "destroyed" on February 18, 2022. Decl. of Diane Bustos, Apr. 18, 2024, ¶ 6, MSJ Ex. 9, ECF 70-9.[4]   The

---

[4]  The period of time in which Del Rincon actually used that Samsung device, if at all, is not clear from the record.   Two sources of information reflect that Del Rincon was using iPhones in 2020 and 2021, not a Samsung device, even as the Samsung was still recorded as

Agency has stated that deactivated CBP phones are destroyed in an effort to protect against the unintended release of national security and/or sensitive law enforcement information.   Decl. of Diane C. Bustos, Mar. 18, 2024, ¶¶ 12-13, MSJ Ex. 6, ECF No. 70-6.

The Agency's property logs did not document a Samsung phone having been provided to Macias.   The local property manager inquired of the Agency's cellular service provider, AT&T, as well as the manufacturer, Samsung, in an effort to obtain any information that might help him locate such a device within the Agency's inventory, but to no avail.   Based on what Agency staff learned from AT&T, it reported to Hoffmann that Macias's cell phone number was associated with a particular Samsung phone from June 2018 through December 2019 but that it could not locate the actual device to search it for any records.

_____

"assigned" to him.   *See* Decl. of John J. MacNeil, Oct. 7, 2021, at ¶¶ 4, 7, MSJ Ex. 2, ECF No. 70-2 (explaining that the Agency's mobile telephone management system reflected that Del Rincon was using an iPhone Series 8 device when he was upgraded to an iPhone Series XR device on February 7, 2020); Decl. of David Garcia, June 22, 2021, MSJ Ex. 3, ECF No. 70-3 (reporting on May 5, 2021 visual inspection of cellular phone then used by Del Rincon, which was described as an "iPhone XR").

Upon further inquiry of AT&T, it learned that there had been "no activity" on the device except in June 2020.    Decl. of Alejo Gaudea, Mar. 18, 2024, ¶¶ 7-9, MSJ Ex. 7, ECF No. 70-7; Decl. of Diane Bustos, Apr. 18, 2024, ¶ 8, MSJ Ex. 9, ECF No. 70-9.    This rendered it an unlikely repository of documents responsive to the FOIA request.

Both Del Rincon and Macias declare that they have no independent recollection of what mobile device they used in the January-February 2019 timeframe.    They both describe a process in which IT or property personnel from the Agency would arrange for the replacement of their mobile devices on a periodic basis for upgrades or to address a defect. Neither of them was responsible for keeping track of or logging their Agency property in this regard.    Decl. of Paul Del Rincon, Nov. 7, 2024, ¶¶ 2, 4, 5, MSJ Ex. 13, ECF No. 70-13; Decl. of Pete Macias (unsigned), Nov. 7, 2024, ¶¶ 2-5, MSJ Ex. 14, ECF No. 70-14.    Despite searching its local property records thoroughly, the Agency was unable to account for the loss of the Samsung phone that was associated with Macias's phone number.    *See* Decl. of Alejo Gaudea, Mar. 18, 2024, ¶¶ 7-8, 11, MSJ Ex. 7, ECF No. 70-7.

Plaintiff requested an opportunity to depose Del Rincon and Macias and subpoena cellular service providers in light of the unavailability of some of these mobile devices for review.   Pl.'s Stmt. Re: Unresolved Issues, June 3, 2024, ECF No. 63.   She argued that the testimony of Del Rincon and Macias "concerning their communications and communication devices" constituted "sources of evidence and responsive information" to which she was entitled.   *Id.* at 6.   I did not grant her request to permit this discovery and instead set a deadline for the Agency to file its summary judgment motion.   ECF No. 65.

## II.    Legal Standards

FOIA grants the public access to government agencies by requiring agencies to make records available upon a request that "reasonably describes such records."   *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1163 (3d Cir. 1995); 5 U.S.C. § 552(a)(3).   Upon receipt of a FOIA request, an agency must conduct a reasonable search and produce all responsive records not otherwise protected from production under one of the statute's enumerated exemptions.   *See, e.g., Abdelfattah v. U.S.*

*Dep't of Homeland Security*, 488 F.3d 178, 182 (3d Cir. 2007).    An

agency "fulfills its obligations under FOIA if it can demonstrate beyond

material doubt that its search was reasonably calculated to uncover all

relevant documents."    *Ancient Coin Collectors Guild v. U.S. Dep't of

State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations omitted).    Agencies

responding to FOIA requests must "make more than perfunctory

searches and, indeed, follow through on obvious leads to discover

requested documents."    *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d

321, 325 (D.C. Cir. 1999).

The Court may grant summary judgment to a government agency

as the moving party if it demonstrates that there is no genuine dispute as

to any material fact and that it is entitled to judgment as a matter of law.

Fed. R. Civ. Proc. 56(a).    Summary judgment may be based on an

agency's supporting declaration if it is relatively detailed and

nonconclusory.    *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).

Before granting summary judgment in favor of the government, the

court must determine that "the materials submitted by the agency

satisfactorily demonstrate the apparent adequacy of the search

conducted"; summary judgment would "usually be inappropriate" if "the agency's responses raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory[.]"    *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).    *See also Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (noting that summary judgment is not appropriate where the agency affidavits contain "merely conclusory statements").    An agency's claim for summary judgment can be "weaken[ed]" by a failure to find a record that once existed, "coupled with a conclusory affidavit about the methodology of the search." *Aguiar v. D.E.A.*, 865 F.3d 730, 739 (D.C. Cir. 2017).    *See also Perry*, 684 F.2d at 127 (observing that affidavits that explain scope and method of search in reasonable detail will suffice "in the absence of countervailing evidence or apparent inconsistency of proof").

## III.   Discussion

Hoffmann's FOIA request of the Agency sought correspondence and records of communications between CBP agents and a particular individual believed to have been operating in Piedras Negras, Mexico

and concerning the capacity of the CBP to accept asylum seekers for processing at the Eagle Pass Port of Entry.   At the prior summary judgment stage, I determined that the Agency's searches had been unsatisfactory in two areas.   The Agency undertook additional review in response to my order and prepared further declarations about its efforts. Its renewed motion for summary judgment seeks to resolve concerns about the reasonableness of the search that followed my last order.   The Agency urges me to find that it has demonstrated beyond material doubt that its searches were reasonably calculated to uncover all available responsive documents.

Plaintiff does not dispute any factual statement that was presented in the Agency's renewed motion.   But she contends that genuine issues of material fact exist, precluding judgment in the Agency's favor, "[b]ecause the agency has repeatedly failed to meet its burden of showing it complied with FOIA in tasking searches responsive to Plaintiff's request[.]"   ECF No. 73 at 8.

## A.   The search of email accounts for responsive records

The first impediment to summary judgment when I previously

considered the Agency's request was its inadequate search of email accounts.

My prior Order directed the Agency to run a search of its email records using particular search terms.   Agency personnel did so, beginning with a sample search for email messages generated on two random dates within the relevant time frame.   They then reviewed the results, which were large, and determined that: (1) the same messages and documents often occurred repeatedly; (2) some "hits" were Excel spreadsheets that resulted in an excessive number of pages when formatted for production; and (3) Hector Menchaca's name did not appear in any of the records that resulted from the search, although the name of an Agency employee with the same surname often came up as a false positive result.   Agency personnel communicated with Plaintiff about the results and the documents that came up in the search.   Supp. Decl. of Patrick A. Howard, Nov. 7, 2024, MSJ Ex. 10, ECF No. 70-10. The Agency met and conferred with Plaintiff about limitations that might yield more targeted results than the millions of pages predicted. The Agency also produced 650 additional pages of documents that

Plaintiff previously identified as having been missing from earlier

productions.  *Id.*

 As to this aspect of the Agency's motion, Plaintiff objects that the

Agency's "established pattern of non-compliance" with its FOIA

obligations "demonstrates that the adequacy of its efforts has been

unreasonable."   ECF No. 73 at 8.   She notes that the Agency does not

purport to have *produced* all of the documents that came up in the email

search and that the Agency took the position that the number of records

that would need to be reviewed for responsiveness was still excessively

voluminous.   She complains that the CBP is "hiding behind a problem

of its own creation."   *Id.*   These objections do not preclude summary

judgment.

 My prior Order required the Agency to conduct a revised search of

all email accounts in the cbp.dhs.gov domain using the search terms

proposed by Plaintiff.   Anticipating that the revised search might return

"an overwhelming number of potentially responsive records," I required

that the parties meet about how to refine the search so that production

would not be an undue burden.   *See* ECF No. 51 at 2-3.   That process

occurred.   And, as I also required, the Agency provided a declaration

describing the revised email search.   That declaration – from the

Agency's long-time FOIA Division Branch Chief – confirms that the

Agency followed all reasonable leads and did not withhold production of

any responsive records.   *See* Howard Supp. Decl., MSJ Ex. 10, ECF

No. 70-10.   The Agency tested Plaintiff's search terms on a sample of

email messages – by limiting the scope to only two days of the relevant

period – and learned that the search was effectively unworkable.   Even

when an additional limiting term was added, the search yielded 124

documents totaling 124,793 pages.   And in its evaluative review of the

pulled records, the Agency's FOIA staff found no records that referred

to Hector Menchaca or that included the specific terms most central to

Plaintiff's inquiry.   *Id.* at ¶ 8.   Its approach to searching its email server

and reviewing pulled records to determine their responsiveness to the

FOIA request has been reasonable under the circumstances.

Neither FOIA nor my prior Order required the CBP to carry out a

search that would constitute an undue burden.   The Agency has acted in

accordance with the Order.   It is entitled to summary judgment as to its

search for responsive records in its email domain.

### B.    The search of mobile devices for responsive records

The other impediment to summary judgment when I previously considered the Agency's request was its review of mobile devices used during the relevant period by two particular CBP officials: Eagle Pass Port Director Paul Del Rincon and Assistant Port Director Pete Macias. My remedial order focused on the possibility of the recovery of any data that was lost or wiped from mobile devices they may have used during the relevant time for communications encompassed by the FOIA request.   I required the Agency to employ a qualified information technology or forensic data recovery specialist to undertake a revised search for responsive records from both the active devices of Del Rincon and Macias and any available inactive devices.   I required the specialist and appropriate Agency personnel to account for the loss of records and devices and to detail the recovery efforts in supporting declarations. The revised search for responsive records from the devices was to include WhatsApp messages and any other responsive WhatsApp data. ECF No. 51 at 3-4.

The Agency performed the forensic searches that I ordered but ultimately found no additional responsive records.   The question that remains is whether the Agency has shown in sufficient detail that its methodology for searching the mobile devices of Del Rincon and Macias was adequate such that it may be granted summary judgment. Plaintiff contends that it cannot be adequate where CBP admitted "that it destroyed the mobile phone device assigned to Port Director Del Rincon three years after Ms. Hoffmann's FOIA request and then months after her April 9, 2021 email directly raising the port directors' devices as sources of responsive records."   ECF No. 73 at 5-6 (emphasis removed).   *See also id.* at 8 (noting that while CBP asserts that "it was not possible to conduct searches of" devices used by Del Rincon and Macias, "[t]his statement boldly ignores the fact that it was possible to search these devices while they still existed").

### 1.    The search for responsive records on devices used by Del Rincon

The summary judgment record reflects that Port Director Paul Del Rincon's mobile devices were searched by the Agency for records

encompassed by the FOIA request in the following manner:

- The Agency conducted a remote search using a cloud-based app in April 2021 that confirmed that WhatsApp was installed on Del Rincon's then-current device, an iPhone XR.

- A supervisor visually inspected Del Rincon's iPhone XR on May 5, 2021 but no responsive records were found in the WhatsApp application.

- Various iPhones that had been issued by the Agency to Del Rincon were subjected to a forensic examination in February-March 2024. With the exception of one iPhone that could not be accessed, the remaining devices could be reviewed.

  o Searches of those devices, using the search terms provided by counsel and encompassing WhatsApp's various functions, yielded no responsive records.

  o None of the iPhones that were searched had been "in use" during the early 2019 time period at issue.

- During the relevant time period (January 1 – February 21,

2019), a Galaxy S-7 cell phone was assigned to Del Rincon, but records reflect that the device was destroyed on February 18, 2022 and thus not available for the forensic inspection that was ordered in June 2023 and conducted in February-March 2024.

- The iPhone that Del Rincon was actively using in February 2024 was examined by the forensic expert for any historic records falling within the scope of the FOIA request, but none were found.

### 2. The search for responsive records on devices used by Macias

The summary judgment record reflects that Assistant Port Director Pete Macias's mobile devices were searched by the Agency for records encompassed by the FOIA request in the following manner:

- The Agency conducted a remote search using a cloud-based app in April 2021 that confirmed that WhatsApp was installed on Macias's then-current device, an iPhone XR.

- A supervisor visually inspected Macias's iPhone XR on May

5, 2021 but no responsive records were found in the
WhatsApp application.

- Various iPhones that the Agency issued to Macias were
  subjected to a forensic examination.   None of the iPhones
  that were searched had been "in use" during the time period
  at issue.

- Searches of iPhones used by Macias, using the search terms
  provided by counsel and encompassing WhatsApp's various
  functions, yielded no results.

- The Agency contacted its cellular service provider and
  learned that during the relevant time period (January 1 –
  February 21, 2019), a Samsung Galaxy S-7 cell phone was
  associated with Macias's phone number.   The Agency
  searched for the device but could not locate it.   No forensic
  examination of that device was possible.

- Upon further inquiry of its cellular service provider, the
  Agency learned that cellular service was not activated on the

Macias Samsung device except in June 2020.

- The iPhone that Macias was actively using in February 2024
  was examined by the forensic expert for any historic records
  falling within the scope of the FOIA request, but none were
  found.

### 3.    Plaintiff's objection to the adequacy of the search

As noted above, the Agency conducted a physical review of active iPhones of Del Rincon and Macias and a forensic review of those devices and any deactivated iPhones it could locate.   It found no documents responsive to the FOIA request.   The Agency admits that a Samsung phone that was assigned to Del Rincon during the relevant time of early 2019 was destroyed in 2022.   It also admits that its property logs fail to account for the location or use of a different Samsung phone that was associated with Macias's mobile number for a period of time that overlapped with the relevant period.

Plaintiff does not challenge the efforts of the forensic examiner to uncover documents responsive to the FOIA request on the devices that were searched.   Nor does she impeach the thoroughness of the property

manager's efforts to track a missing device assigned to Agency

personnel in his sector.    Rather, Plaintiff contends that the search cannot

have been reasonable where the Agency could not account for the

destruction of the Del Rincon device or the loss of the Macias device.

She argues that any attempt by the CBP to demonstrate that it acted

reasonably in conducting its searches is precluded because, in her view,

the Agency "violated the law in destroying the very sources of

responsive records it was asked to search."    ECF No. 73 at 8.    But the

Agency's destruction of an inactive mobile phone that "it was asked to

search" does not amount to a violation of law.    And it does not preclude

the grant of summary judgment to the Agency after it has produced what

it has available.

Courts agree that the destruction of records does not constitute a

FOIA violation when the destruction was not undertaken to be

purposefully evasive of FOIA responsibilities.    In *Houser v.*

*Department of Health & Human Services*, 486 F. Supp.3d 104 (D.D.C.

2020), the Centers for Medicare and Medicaid Services failed to place a

litigation hold on potentially responsive records after it received the

plaintiff's FOIA request.   As a result, certain records were destroyed

and could not be provided to the plaintiff.   The reviewing court,

however, concluded that the agency's searches for responsive records

were reasonable under the circumstances:

> The plaintiff has made no showing that CMS
> purposely destroyed documents in order to avoid
> having to release them, and nothing in the record
> of this case suggests that CMS's error was willful
> or otherwise warrants further action by the Court.
> [Citation omitted.]   Furthermore, "[i]f the agency
> is no longer in possession of the document, *for a
> reason that is not itself suspect*, then the agency is
> not improperly withholding that document and the
> court will not order the agency to take further
> action in order to produce it."   *SafeCard Servs.*
> [*v. S.E.C.*], 926 F.2d [1197,] 1201 [(D.C. Cir.
> 1991)] (emphasis added).

*Houser*, 486 F. Supp.3d at 114-15.   Similarly, in *Minkovski v. U.S.*

*Department of Treasury*, 384 F. Supp.3d 244 (E.D.N.Y. 2019), the

Eastern District of New York accepted that the destruction of records

pursuant to ordinary practices did not undermine the adequacy of an

agency's searches.   It also pointed to several other cases in which courts

were presented with the circumstance that documents had been

destroyed but FOIA obligations were deemed satisfied:

> *See Conti v. U.S. Dep't of Homeland Sec.*, No. 12-
> CV-5827, 2014 WL 1274517, at *140 (S.D.N.Y.
> Mar. 24, 2014) (finding that the Department of
> Homeland Security "has no obligation to preserve
> its records according to the rules of civil
> discovery"); *Flowers v. I.R.S.*, 307 F. Supp.2d 60,
> 71 (D.D.C. 2004) (finding that the Internal
> Revenue Service conducted an adequate search
> for records by providing a "non-suspect reason for
> the destruction" of documents by submitting
> "published document-retention schedules");
> *Landmark Legal Found v. E.P.A.*, 272 F. Supp.2d
> 59, 66-67 (D.D.C. 2003) ("FOIA does not impose
> a document retention requirement on agencies.
> Even where an agency was obligated to retain a
> document and failed to do so, that failure would
> create neither responsibility under FOIA to
> reconstruct those documents nor liability for the
> lapse.").

*Minkovski*, 384 F. Supp.3d at 253-54.   At the circuit level, the Court of

Appeals for the District of Columbia has similarly observed that:

> … in the absence of countervailing evidence or
> apparent inconsistency of proof, affidavits that
> explain in reasonable detail the scope and method
> of the search conducted by the agency will suffice
> to demonstrate compliance with the obligations
> imposed by the FOIA.   In considering a
> challenge to an agency's retrieval procedures, a
> reviewing court must thus determine whether the
> materials submitted by the agency satisfactorily
> demonstrate the apparent adequacy of the search
> conducted.   Where the agency's responses raise

> serious doubts as to the completeness of the
> search or are for some other reason unsatisfactory,
> summary judgment in the government's favor
> would usually be inappropriate."

*Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982).   *See also Gallant v.*

*NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (noting that "[s]ummary

judgment may be granted on the basis of agency affidavits if they

contain reasonable specificity of detail rather than merely conclusory

statements, and if they are not called into question by contradictory

evidence in the record or by evidence of agency bad faith" (citation

omitted)).

Plaintiff has not presented sufficient evidence from which a

reasonable factfinder could conclude that the CBP either destroyed

records responsive to the FOIA request to avoid producing them or that

its responses to her request (and this subsequent litigation) "raise serious

doubts as to the completeness of" its search.   Plaintiff believes that Del

Rincon and/or Macias used the WhatsApp application on mobile devices

as a means of communication while allegedly managing the flow of

asylum-seekers at the border in early 2019.   It is unknown whether

responsive records could have been produced from the absent Samsung

devices had they been examined by a forensic specialist.   But there is

nothing in the record to suggest that the Agency ever extracted any

records from Samsung devices associated with Del Rincon or Macias

and then destroyed the records.   Nor is there any evidence that the

Agency purposely destroyed or misplaced their Samsung devices in

order to avoid a production of records.   On the contrary, the Agency

invested significant resources both in undertaking these searches,

including trying alternative paths to uncover any responsive records, and

in preparing its responses.   *See, e.g.,* Decl. of Diane Bustos, Mar. 18,

2024, ¶¶ 4-8, 11-12, 14, MSJ Ex. 6, ECF No. 70-6 (recounting over 100

hours spent coordinating the location, searching, and review of active

and inactive mobile devices of Del Rincon and Macias).   It

affirmatively contacted third parties in order to ascertain if there were

any other leads it could pursue in order to determine whether there

existed any records of WhatsApp communications in the relevant time.

*See* Decl. of Alejo Gaudea, Mar. 18, 2024, ¶ 10, MSJ Ex. 7, ECF No.

70-7 (documenting hours spent reviewing property logs and inquiring of

cell phone service provider).

Plaintiff may be frustrated at the Agency's apparent inability to conclusively identify which mobile devices Del Rincon and Macias may have used while performing their duties in January and February 2019. But the Court cannot impute from the events that transpired as to the Agency's mobile phone recordkeeping and record review that the Agency's search has been incomplete or that it has acted with bad faith in its response to Plaintiff's FOIA request.   The Agency complied with my Order and has searched the current devices of Del Rincon and Macias for records responsive to the FOIA request – including any WhatsApp messages, text messages, and call logs to the person and phone number identified in the request.   It also searched all available devices it possessed that were believed to have been used by Del Rincon or Macias at some point in the past that might have captured communications from January and February 2019.   There is nothing more the Agency can do.

## IV. CONCLUSION

Litigation as to a FOIA request is generally resolved at summary judgment. The CBP's prior motion was filed at a time where some stones were left unturned, but it has now sufficiently answered as to its search process. Defendant has satisfied its obligations under FOIA and this Court's prior Order by conducting a search for responsive records in the manner I directed and by making available to Plaintiff the responsive records in its possession. The Agency is entitled to summary judgment. An appropriate order follows.